IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **TBB INTERNATIONAL BANK CORP.,**<br>Plaintiff,<br><br>v.<br><br>**JOSÉ ANTONIO OLIVEROS FEBRES CORDERO, ET AL.,**<br>Defendants. | CIVIL NO. 23-01310 (ADC) |

**MOTION TO DISMISS AS TO CODEFENDANTS' CORREDOR AND VALENCIA**

**TO THE HONORABLE COURT:**

**NOW COME** co-defendants Gustavo José Gerardo Corredor Salcedo ("Mr. Corredor") and Alejandro J. Valencia Hurtado, ("Mr. Valencia") through the undersigned attorney and respectfully allege and pray as follows:

### I. INTRODUCTION

Plaintiff TBB International Bank Corp. ("TBB" and/or "Bank"), alleges that Mr. Corredor, and Mr. Valencia among other defendants, deceived Plaintiff's predecessor Activo International Bank (Activo or the Bank) thereafter for the economic benefit of Activo's former chairman and majority shareholder, Codefendant José Antonio Oliveros Febres-Cordero ("Mr. Oliveros") and, as such, engaged in in a pattern of racketeering activity in violation of sections 1962(c) and (d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and Puerto Rico law. (Docket No. 1). TBB has failed to comply with the stringent pleading standard for a RICO claim. It also asserts pendent claims under Puerto Rico Law, pursuant Article of the Puerto Rico Civil Code, and for unjust enrichment. Nevertheless, TBB admits that it became aware of the alleged fraud and its

1

damages in 2020 but failed to file the instant complaint in the one-year period allowed by the statute, and accordingly, the claims under Article 1802[1] are time-barred.

More importantly, as to the Federal RICO claim, the complaint fails to allege discrete acts of mail or wire fraud, transportation of stolen money and/or money laundering, including the time, place, and nature of the alleged predicate acts. Specifically, TBB does not particularize any factual events where Mr. Corredor and or Mr. Valencia committed at least two (2) predicate acts of racketeering activity. Other that alleging that Mr. Corredor was the acting manager of Defendants' Inversiones Saitam and Consultora Baru (hereafter Saitam and Baru respectively), TBB has failed to establish the requirement of conduct to justify a claim against either Mr. Corredor or Mr. Valencia. There's no other discrete act alleged in the complaint to link either to the acts and damages alleged.

Additionally, TBB's allegations fail to establish closed-ended continuity sufficient to show a pattern of racketeering activity by either appearing codefendant. Assuming, for the sake of argument, that the predicate acts alleged by TBB did occur, TBB averments fall short of establishing a RICO pattern of racketeering activity. As the jurisprudence establishes, the acts alleged by TBB are no more than a single effort to facilitate a single financial endeavor to affect a single victim, not enough to support a RICO charge. Moreover, TBB has failed to plead that either Mr. Corredor or Mr. Valencia agreed personally to commit two or more predicate crimes to assist or to act on behalf of the alleged enterprise.

Finally, inasmuch as TBB's federal claims may not survive the strict pleading requirements of a RICO claim, this Court should decline to exercise supplemental jurisdiction over TBB's state claims and therefore they should be dismissed. TBB claim pursuant Article 1802 of the Puerto

---

[1] Incorrectly named Art. 1802 since it was substituted by article 1536 of the new PR Civil Code (2020).

Rico Civil Code should be dismissed with prejudice as time barred. As to the unjust enrichment claim, TBB' allegations are vague and conclusory. TBB fails to include any factual event to establish an unjust enrichment scheme by Mr. Corredor nor Mr. Valencia, or to establish that TBB suffered as a result that unjust enrichment scheme. Accordingly, the appearing Codefendants hereby moves the Court to dismiss the instant complaint in its entirety.

## II. DISCUSSION

**A. Standard of Review.**

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to assert the defense of failure to state a claim upon which relief can be granted, before pleading. Fed.R.Civ.P. 12(b)(6). For purposes of evaluating a motion to dismiss asserting this defense, the Court will accept all well pleaded-factual allegations as true and indulges all reasonable inferences in Plaintiff's favor. See, *Nisselson v. Lernout*, 469 F.3d 143, 150 (1st Cir. 2006). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. See, *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).

Thus, to survive the motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 545.

To make this determination, the court employs a two-pronged approach. See, *Ocasio–Hernández v. Fortuño–Burset*, 640 F.3d 1, 12 (1st Cir. 2011). The court first screens the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the

elements of a cause of action." Id. (citations, internal quotation marks and alterations omitted). A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed. Id. The second part of the test requires the court to credit as true all nonconclusory factual allegations and the reasonable inferences drawn from those allegations, and then to determine if the claim is plausible. Id. The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct. *Twombly*, 550 U.S. at 556.

Simply, "a plaintiff cannot expect a trial court to do his homework for him," *McCoy v. Massachusetts Institute of Technology*, 950 F2d 13, 22 (1st Cir. 1991), and plaintiffs must put their best foot forward in an effort to present a legal theory that will support their claim. Id. This Court has further held, in *Davila Aviles v. RYS Int'l Corp.*, 443 F.Supp.2d 233, 238 (D.P.R.2006) (citing *Fleet Credit Corp., v. Sion*, 893 F 2d 441, 444 (1st Cir. 1990)), that the Court "has no duty to conjure up unpled allegation in order to bolster the plaintiff's chances of surviving a 12(b)(6) motion to dismiss".

**B. TBB's factual allegations.**

In the period relevant to the complaint, TBB was engaged in business as Activo, and was authorized in Puerto Rico to accept and demand fixed-term deposits, as well as interbank deposits from non-Puerto Rico residents. Activo" was wholly owned by Codefendant Holding Activo, ("Holding Activo") an entity organized, existing, and doing business under, and by virtue of, the laws of Barbados. (Docket No. 1 at p.24, ¶¶81-83). TBB alleges that Codefendants, including Mr. Valencia and Mr. Corredor, participated in three (3) fraudulent schemes to deceive TBB for the enrichment of Mr. Oliveros discussed below as follows:

1.    In describing the **first scheme**, identified by TBB as the **"Credit Facility and Loan**

**Scheme"**, TBB generically alleges that Defendants, without specifying which, falsely represented that loans and credit terms were requested, approved, and extended pursuant to the purposes disclosed in the applications. (Docket No. 1 at p.26, ¶95). TBB assumes that the funds were transferred by the Bank through electronic payments but fails to identify the method. TBB also alleges that Defendants deposited the loan funds that the Bank extended into bank accounts located in Puerto Rico. (Docket No. 1 at pp. 27-28, ¶¶97 &104).

In support of this alleged scheme, TBB only includes one alleged factual event: That on February 9, 2017, TBB extended a loan of $1.2 million to a party named Customer A, who, on March 22, 2017 transferred $1 Million to Codefendant Gorlio Enterprises, (Gorlio) which in turn, used the funds to pay a loan debt with TBB. (Docket No. 1 at p. 27, ¶¶98-99).

2.  With respect to the **second scheme** called the "**Prepaid Services Scheme**" TBB alleges that Mr. Oliveros and Mr. Valencia executed services contracts with Saitam and Baru to provide services to TBB by means of a prepaid services arrangement. TBB omits any fact to establish how the contracts in question became a "scheme". More in point, TBB simply alleges that Mr. Corredor was the acting manager of Saitam and Baru through "a power of authority extended"[2] by Mr. Valencia, granted on November 18, 2015, (Docket No. 1 at p. 29, ¶108). without any further specific factual reference. TBB simply argues that the prepaid services were not rendered as agreed and the payments made by TBB to Saitam and Baru were transferred to accounts related to and/or under the control of Codefendant Mr. Oliveros and that funds were used pay the loan of debts of companies and to benefit him. (Docket No. 1 at pp. 29-30, 33 ¶¶107, 113 &129). TBB further alleges that it retained the companies to provide marketing services for the acquisition of customers, as well as limited compliance assistance and call center services. (Docket

---

[2] We are at a loss to comprehend this term or the authority imputed to Mr. Valencia over Saitam and Baru.

No. 1 at p. 29, ¶111).

TBB bases the purported second scheme averring that on December 28, 2017, Saitam received a payment of $345,000.00 for the prepaid services it provided to TBB and on the same date it transferred the $345,000.00 from its account in the TBB to Gorlio's account in the Bank. (Docket No. 1 at p. 30, ¶¶ 114-115). TBB fails to specify how the transfer was made, and by whom. In a conclusory way, TBB argues that this scheme was designed to ultimately benefit Defendants and their related entities, and not to cover bona fide services rendered to the Bank. (Docket No. 1 at p. 30, ¶117). TBB further alleges that on September 12, 2018, Saitam received a second payment of $100,000.00 for the prepaid services it provided to the Bank. (Docket No. 1 at p. 31, ¶118) and thereafter, on September 21, 2018, transferred $28,000.00 from its account at the Bank to the account of Codefendant AIB Properties (AIB). (Docket No. 1 at p. 31, ¶119). There's no specification as to how the transfers were made and by whom, other than TBB itself made the transfer.

Additionally, TBB alleges that it had previously extended a commercial promissory note for a loan to AIB with a One Million limit. The promissory note required payment in a period of eight years, in thirty-two quarterly payments of $21,116.10. (Docket No. 1 at p. 31, ¶123). TBB argues that the funds used by AIB to cover the $21,116.10 payment due on September 28, 2018, originated from the money paid by the Bank to Saitam for prepaid services. (Docket No. 1 at p. 32, ¶125-126). Without proffering any supporting facts, TBB posits that Defendants and non-party conspirators sought loans from third-party financial institutions, authorized the guarantees, and failed to repay the loans, knowing the consequences for TBB. (Docket No. 1 at p. 34, ¶133).

3. As **third scheme,** called "**The Bank Assets as Collateral Scheme**" TBB argues, without supporting facts, that Mr. Oliveros and Mr. Valencia misused their positions and authority

6

to collateralize loans at third-party financial institutions with the Bank's assets. Id. In support thereof, TBB avers as a factual event that on September 30, 2016, the Bank extended a standby letter of credit to Gorlio to guarantee payment for a promissory note of $4 million held with a third-party financial institution (Docket No. 1 at pgs. 34, ¶133,136), and claims that the loan funds secured by that letter of credit were mainly used to pay Gorlio's loans and overdrafts with the Bank. ¶139. It further avers that by December 30, 2019, the standby letter of credit covered five point two ($5.2) millions, which had to be satisfied by the Bank as guarantor after Gorlio defaulted on the secured loans, with the resulting loss to the Bank of $5.2 Million. (Docket No. 1 at p. 34, ¶137; p. 35, ¶140).

Additionally, TBB argues that the funds transferred by Holding Activo in or about August 2017, from its account in the Bank to Oliveros', Gorlio's and Saitam's accounts in the Bank were the same funds borrowed while using the Bank's investment portfolio as a guarantee. (Docket No. 1 at p. 36, ¶148). Specifically, TBB alleges that Holding Activo transferred more than three point one ($3.1) millions to Mr. Oliveros, more than two (2) millions to Gorlio, and five hundred thousand dollars ($500,000.00) to Saitam. The funds were transferred to the Defendants' accounts in the Bank. TBB contends that Mr. Oliveros then transferred $188,017.00 to Mr. Valencia and $1.4 million to Gorlio, and Gorlio, in turn, transferred $1.58 million to Customer B's account at the Bank, who utilized the funds to pay off a loan in the Bank. According to TBB, Mr. Oliveros mainly used the borrowed funds to pay loans, finance his lifestyle, and pursue investments. (Docket No. 1 at p. 36, ¶¶147-152).

Finally, in regards to the third scheme TBB, further alleges that in or around June 2018 the Bank allowed Holding Activo to use a certificate of deposit as collateral for a loan of more than $4.5 million granted by a third-party financial institution. (Docket No. 1 at p. 37, ¶158). Then,

Holding Activo transferred $2.9 million of those funds to Gorlio's account in the Bank. (Docket No. 1 at p. 38, ¶160).

**C. TBB failed to complay with the pleading standard for a RICO claim pursuant to 18 U.S.C. § 1962(c).**

    **1. TBB failed to adequately, plausibly and specifically plead a racketeering act.**

Due to the exceptional nature of the RICO statute, to survive a motion to dismiss, complaints that allege a RICO claim, specifically an 18 U.S.C. § 1962(c) claim, must comply with uniquely stringent pleading standards. *Bessette v. Avco Fin. Servs.,* 230 F.3d 439, 443 (1st Cir. 2000) ("Although the pleadings should generally be construed liberally, a greater level of specificity is required in RICO cases.").

In a RICO claim, the pleader is required to go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communications perpetrating that fraud. Id. (quoting *New England Data Services, Inc. v. Becher,* 829 F.2d 286, 291 (1st Cir. 1987). As the Eleventh Circuit Court made it clear in *American Dental*, a plaintiff in a civil RICO claim must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place and person responsible for the statement; (3) the content and manner in which these statements mislead the plaintiff; and (4) what the defendants gained by the alleged fraud. *American Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).

In that vein, where a RICO claim is based on wire or mail fraud, the plaintiff must strictly comply with the pleading standards and allege plausible facts of the defendant(s) participated in (1) a scheme to defraud; (2) knowing and willful participation in the scheme with the intent to defraud; and (3) the use of the mails or interstate wire in furtherance of the fraudulent scheme. See 18 U.S.C. §§ 1341, 1343. See also, *Bonilla v. Volvo Car Corp*., 150 F.3d 62, 66 (1st Cir.

1998). This stringent requirement also applies to 18 U.S.C. § 2314 money transportation claims. *Seville Indus Machinery v. Southmost Machinery*, 742 F.2d 786 (3d Cir. 1984); See also, *Van Dorn Cent. States Can. v. Howington*, 623 F. Supp. 1548 (N.D. Ohio 1985).

In addition, Plaintiff must provide particularized facts not only as to the claim of fraud, but also as to each specific defendant. *MCDP Phx. Servs. PTE v. First Fin. Int'l Bank*, CIVIL 21-1534 *6 (JAG) (D.P.R. Mar. 27, 2023) (citing *Am. Buying Ins. Servs. v. S. Kornreich & Sons,* 944 F. Supp. 240, 247-48 (S.D.N.Y. 1996)). ("[F]or each defendant, [Plaintiffs must] allege facts tending to show with particularity that the defendant committed at least two predicate acts."). See *American Dental*, 605 F.3d at 1291 (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc*., 116 F.3d 1364, 1380-81 (11th Cir.1997)). A plaintiff must show that "the defendants' actions were not only a but for cause of plaintiff's injury, but the proximate cause as well." *Sterling Suffolk Racecourse, LLC v. Wynn Resorts, LTD,* 990 F.3d 31, 35 (1st Cir. 2021).

To support a money laundering claim plaintiff must allege: "(1) that the defendant conducted a financial transaction; (2) that the transaction in fact involved the proceeds of specified unlawful activity as defined in [18 U.S.C.] § 1956(c)(7); (3) that the defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and (4) that the defendant knew that the financial transaction was designed in whole or in part to conceal or disguise the source, ownership, control, etc., of those proceeds." *Leung v. Law,* 387 F.Supp.2d 105 (E.D.N.Y.2005) (citing *United States v. Maher,* 108 F.3d 1513, 1527-28 (2d Cir.1997)). Although pleadings alleging money laundering are not subject to the stringent particularity requirement of Rule 9(b), all of the essential elements of the crime must be alleged in the complaint. Id. (citing *Bernstein v. Misk,* 948 F.Supp. 228, 236 n. 2 (E.D.N.Y.1997)).

Here, Plaintiff TBB failed to comply with the strict pleading requirements for a RICO

9

section 1962(c) claim. TBB averments fail to include particularized acts of mail or wire fraud, stolen money transportation and money laundering; they are devoid of any specific reference to the time, place, and nature of the alleged predicate acts, and to identify specifically the defendant involved in each specific illegal act. Rather, TBB engages in unsupported argument with broad, vague allegations about various schemes that include some type of money transferring, yet without complying with the required specificity. TBB failed to include the exact time, date, parties involved, place and nature of any transaction involving wire or mail fraud, or any other fraudulent act. See *U.S. ex rel. Joshi v. St. Luke's Hosp.*, Inc., 441 F.3d 552, 557 (8th Cir.2006) (requiring plaintiff to provide "some representative examples of [defendants'] alleged fraudulent conduct, specifying the time, place, and content of their acts and the identity of the actors").

Further, TBB failed to allege, in particular, that either Mr. Corredor or Mr. Valencia engaged in at least two (2) instances of such predicate acts of racketeering activity directly affecting TBB. On the contrary, TBB only includes general allegations about Mr. Corredor's role as acting manager of Saitam and Baru (Docket No. 1 at pp. 8, 13, 29 32, ¶¶30, 46(b), 46(j) 108, 127), and the fact that Mr. Valencia is his brother-in-law. (Docket No. 1 at pp. 8, 21 & 48, ¶¶29, 65 & 203). As to Mr. Valencia, TBB only includes general allegation about his role and duties as Activo's (TBB) executive (Docket No. 1 at pp. 25-26, ¶¶87, 89-91), and as a shareholder of some of codefendants companies. (Docket No. 1 at p.46, ¶193). TBB infers that those facts by themselves means that Mr. Corredor, and or Mr. Valencia were somehow involved in an illegal scheme.

In fact, TBB fails to aver a single fact where the appearing defendants participated directly or indirectly in act of mail or wire fraud, transportation of stolen money, money laundering or any other fraudulent act; nor how they were involved in the alleged enterprise, and benefited from the

10

alleged fraudulent acts. Likewise, the only allegations in the complaint which pertain to money laundering are conclusory assertions to the effect that Defendants' acts were done willfully and with the knowledge that the money originated from unlawful activity. There's no mention of any act committed by Mr. Corredor or Mr. Valencia that constitutes money laundering. The conclusory statements included in the complaint cannot support an inference that either appearing defendant violated 18 U.S.C. § 1956.

Additionally, TBB acknowledges that the funds related to the transactions from the alleged schemes were deposited into accounts located in Puerto Rico**, in most cases in the Bank itself**. As a result, TBB has not averred the existence of an interstate transaction. See *Ocasio–Hernandez,* 333 F.Supp.2d at 11-12. (Plaintiffs did not allege that telephone communications went outside of Puerto Rico. Thus, Plaintiffs has only pled the use of *intrastate* communications as wire fraud, which are outside of the reach of the statute. As such, Plaintiffs have failed to plead RICO predicate acts.).

Accordingly, TBB has failed to adequately plead two predicate act of wire fraud, mail fraud, transportation of stolen money or money laundering over an interstate transaction committed by Mr. Corredor or Mr. Valencia. In other words, TBB has failed to sufficiently plead one single predicate act and consequently, has failed to plead a pattern of racketeering activity that can be attributed to Mr. Valencia or Mr. Corredor. See *William Spencer & Spencer Bros. v. Doran*, 2020 DNH 147 *39 (D.N.H. 2020) (citing *Ahmed*, 118 F.3d at 889) ("Failure to plead predicate acts adequately is enough to sink [a plaintiff's] RICO claim.").

**2. TBB failed to establish the existence of a pattern of racketeering activity.**

The RICO statute requires a plaintiff to show (1) two or more "acts of racketeering activity", that is, acts that violate certain specified federal statutes; and (2) that these acts, taken

11

together, demonstrate a "*pattern* of racketeering activity." by each defendant. 18 U.S.C. § 1961(5). In addition, the plaintiff must demonstrate that the "predicates are related, and that they amount to or pose a threat of continued criminal activity." See *Efron,* 223 F.3d at 15.

Acts are related if they have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id. To establish continuity, "the plaintiff must show that the related predicates amounted to, or posed a threat of, continued criminal activity." Id. "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); See also, *Giuliano v. Fulton*, 399 F.3d 381, 387 (1st Cir. 2005). ("[W]here only a few predicate acts are alleged . . . continuity can never be established.").

In other hand, where the alleged activity is beyond sporadic but not clearly continuous, courts "look to 'indicia of continuity.'" *Home Orthopedics Corp. v. Rodriguez*, 781 F.3d 521, 529 (1st Cir. 2015). Relevant factors include "whether the defendants were involved in multiple schemes, as opposed to 'one scheme with a singular objective'; whether the scheme affected many people, or only a 'closed group of targeted victims'; and whether the scheme had the potential to last indefinitely, instead of having a 'finite nature'." Id. (quoting *Efron,* 223 F.3d at 18-19).

In the instant case, the racketeering activity included in the complaint is closed-ended in continuity. (Docket No. 1 at p. 17, ¶48). Although TBB proffers general allegations of racketeering activity through a period of several years, it includes only eight factual events of alleged wire fraud over the course of one year and a half, between 2017 to 2018. In all TBB alleges that several sums of money were transferred to various entities as part of the schemes to defraud TBB. It does no

12

mentions any other party affected by it. (Docket No. 1 at pp. 27, 30-31, 36 & 38, ¶¶99, 114-115, 118-119, 147-150 & 160). As well, TBB only alleges that transfers of money were ultimately linked only to Codefendant Mr. Oliveros and/or entities related to or controlled by him. (Docket No. 1 at pp. 28, 33 & 38, ¶¶103, 129 & 165).

That's not enough to establish a pattern of racketeering. Even taking to account the alleged existence of multiples predicate acts over several years these are not more than a single effort to benefit Mr. Oliveros that only has affected TBB. The First Circuit has found than when the alleged scheme only targets few victims and one purpose is not enough to establish a RICO claim See *Efron,* 223 F.3d at 18-19 (seventeen predicate acts carried out over 21 months as part of a single scheme to facilitate a single financial endeavor targeting three victims could not support a RICO pattern under the closed continuity approach. See also, *Apparel Art Int'l, Inc. v. Jacobson,* 967 F.2d 720, 723 (1st Cir.1992) (holding that "several instances of criminal behavior," including making bribes and false statements, were "appropriately characterized as separate parts of a single criminal episode" because they "comprise[d] a single effort to obtain (and to keep) one ... Defense Department contract").

In sum, the facts of this case, fall neatly within a line of cases in which the First Circuit has found the required continuity lacking. See *Conway v. Licata*, 62 F. Supp. 3d 169, 173 (D. Mass. 2014). First, the number of predicate acts is not high, nor the duration of the conduct so long as to necessitate a finding of continuity. Id (citing *Efron,* 223 F.3d at 17-18) (finding no closed-ended continuity where the complaint alleged seventeen predicate acts over twenty-one months)). Second, the predicate acts in this case jointly targeted only TBB. Id (citing *Giuliano,* 399 F.3d at 390 (considering that a scheme targeted only an individual victim and his company in finding no closed-ended continuity). Third, the alleged conduct constitutes a single effort to benefit

13

Codefendant Mr. Oliveros and/or entities related to or controlled by him. Id (citing *Apparel,* F.2d at 723 (distinguishing a single criminal effort from the separate criminal episodes intended to be proscribed by RICO)). Therefore, TBB failed to establish a pattern of racketeering to comply with a RICO claim.

**3. The Complaint fails to aver that either Mr. Corredor or Mr. Valencia participated in the operation or management of the purported enterprise.**

RICO section 1962(c)'s "conduct" element requires that a defendant "conduct or participate, directly or indirectly, in the conduct" of the enterprise. 18 U.S.C. § 1962(c). The United States Supreme Court interprets this element to mean that a defendant must "participate [] in the operation or management of the enterprise." *Reves v. Ernst & Young*, 507 U.S. 170, 183, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). The plaintiff "must prove some part in the *direction* ... of the enterprise's affairs." *United States v. Darden,* 70 F.3d 1507, 1543 (8th Cir.1995).

In the instant case, TBB has not established the element of conduct to justify a claim against Mr. Corredor, other that arguing that Mr. Corredor was the acting manager of Codefendants Saitam and Baru, (Docket No. 1 at pp. 8, 13, 29 32, ¶¶30, 46(b), 46(j) 108, 127), and he had a kinship relationship with Mr. Valencia (Docket No. 1 at pp. 8, 21 & 48, ¶¶29, 65 & 203). Regarding Mr. Valencia, TBB only includes general allegation about his role and duties as Activo's (TBB) executive (Docket No. 1 at pp. 25-26, ¶¶87, 89-91), and as a shareholder of some of codefendants companies. (Docket No. 1 at p.46, ¶193).

However, TBB has not alleged that Mr. Corredor nor Mr. Valencia participated willingly and knowingly in the operation and/or management of the enterprise, nor has TBB alleged that Mr. Corredor and Mr. Valencia acted on behalf of the enterprise. Consequently, TBB has not complied

with the pleading requirements to establish the element of conduct for a RICO section 1962(c) claim to flourish against Mr. Corredor and Mr. Valencia.

### D. TBB failed to meet the pleading standard for a RICO, 18 U.S.C. § 1962(d) claim.

To succeed under RICO section 1962(d) a plaintiff must show that defendants were parties to an unlawful agreement or that defendants knowingly agreed to further its affairs through the commission of various offenses. *Miranda v. Ponce Federal Bank*, 948 F.2d 41, 47-48 (1st Cir. 1991). "A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts" of racketeering activity. *American Dental* 605 F.3d at 1293 (citing *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 950 (11th Cir. 1997)). As a result, "[t]o survive a motion to dismiss, a RICO conspiracy count must allege (1) that an enterprise affecting interstate commerce existed, (2) that the defendant knowingly joined the conspiracy, and (3) that the defendant intended to further an endeavor which, if completed, would have satisfied the pattern requirement of RICO." *Laverty v. Massad*, No. 08-cv-40126-FDS at *6 (D. Mass. Mar. 10, 2009) (citing *Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1561 (1st Cir. 1994)).

General allegations of a conspiracy which are unsupported by facts are insufficient to state a cause of action. The complaint must set forth the facts alleged to constitute the RICO conspiracy with considerable detail as to time, place, object, and accomplishment. *Bernstein v. IDT Corp.*, 582 F. Supp. 1079 (D. Del. 1984). The RICO conspiracy count must allege, as a minimum, that each defendant agreed personally to commit two or more predicate crimes in furtherance of the conspiracy and the enterprise, in addition to alleging an agreement to participate in the conduct of an enterprise's affairs through a pattern of racketeering activity. A defendant's personal

15

participation, by act or agreement, in the predicate offenses in furtherance of the enterprise is required. *Libertad v. Welch*, 53 F.3d 428, 445 (1st Cir. 1995).

Here, TBB does not specifically aver that Mr. Corredor and or Mr. Valencia agreed to assist or to act on behalf of "the enterprise" and/or the existence of a commitment or agreement to commit two predicate acts. Similarly, TBB does not allege that Mr. Corredor or Mr. Valencia acted personally in two or more predicate acts. TBB only offers conclusory statements to the effect that Mr. Corredor assisted in furthering the alleged prepaid services scheme by managing the allegedly sham companies [Saitam and Baru] that Codefendants Oliveros and Valencia utilized to move money from the Bank to other related accounts to pay for loans, credit facilities, overdrafts, and make capital contributions to the affiliate banks. (Docket No. 1 at pp. 8, 32 &48 ¶ ¶30, 127 &203).

The same conclusory statements were averred for Mr. Valencia. TBB has only inferred that because Mr. Valencia was executive involved in the day-to-day functions of the Bank, he somehow assisted or agreed to conspire on behalf of the alleged enterprise. (Docket No. 1 at pp. 25-26, 28-30, 33-34, 38 ¶¶87, 89-91, 103, 107-108, 113, 129, 133, 165-166). Yet, "[t]hese are the kinds of "formulaic recitations" of a conspiracy claim that the Court in *Twombly* and *Iqbal* said were insufficient." See *American Dental,* 605 F.3d at 1294 (citing *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966).

Also, as previously mentioned, TBB failed to establish a pattern of racketeering activity and that also precludes a claim under section 1962(d). *See, e.g., Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1191 (3d Cir. 1993) ("Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient."). Consequently, TBB fails to meet the heightened pleading requirements and thus, fails to state a RICO conspiracy claim.

16

**E. TBB's state claims have no merit.**

Since no federal claim by TBB can survive the stringent pleading requirement of its RICO claim, this Court should decline to exercise supplemental jurisdiction over TBB's state claims. *Camelio v. American Federation*, 137 F.3d 666, 672 (1st Cir. 1998) ("The balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation."). Moreover, since none of the supplemental jurisdiction claims have grounds to survive the dismissal stage.

**1. TBB's Fraud in the Inducement Claim is Time-Barred.**

Pursuant to the incorrectly cited Article 1802 of the Puerto Rico Civil Code, 31 PR Laws Ann. § 5141 (now Art. 1536 of the new PR Civil Code (2020), whoever by action or omission causes damage to another, through fault or negligence, is obliged to repair the damage caused. This article makes a party liable when its negligent acts or omissions cause injury to another. P.R.Laws Ann. tit. 31, § 5141. A plaintiff must bring suit within one year "from the time the aggrieved person had knowledge thereof." *Id.* § 5298(2). "The law of Puerto Rico treats a person as being aware of all that, having awareness constituting notice, that person would have been likely to come to know through the exercise of care." *Rodríguez-Suris v. Montesinos,* 123 F.3d 10, 16 (1st Cir.1997).

TBB alleges (Docket No. 1 at. p. 25, ¶¶ 85-86), that, after its restructuring and the administration of a new management sometime between March and May 2020, TBB became suspicious of the activities and transactions allegedly carried out by the defendants and non-party conspirators and the extent of the losses they caused the Bank to suffer. Therefore, since the statute of limitation is one (1) year for damages claims pursuant Article 1802 of the Puerto Rico Civil Code, the claim is time-barred and should be dismissed.

### 2. TBB fails to State a Claim for Unjust enrichment.

To prove a claim for unjust enrichment under Puerto Rico law, "[t]he following requirements must be present: (1) existence of enrichment; (2) a correlative loss; (3) nexus between loss and enrichment; (4) lack of cause for enrichment; and (5) **absence of a legal precept excluding application of enrichment without cause**." *Puerto Rico Tel. Co. v. SprintCom, Inc.,* 662 F.3d 74, 97 (1st Cir. 2011).

In the instant case, TBB only makes general and conclusory allegations about unjust enrichment and does not include any factual event to demonstrate that it suffered as a result of an unjust enrichment by Mr. Corredor or Mr. Valencia. Specifically, TBB does not aver how either appearing defendant was enriched or the exact amount of money received as a result of the alleged fraudulent acts. Further, TBB alleges that the only party that was benefited was Codefendant Oliveros (Docket No. 1 at p. 63, ¶288). In addition, most of the acts that TBB uses to establish the applicability of the claim for unjust enrichment are related to contractual agreements, which preclude such claim. Accordingly, this Court should also dismiss TBB's unjust enrichment claims.

### 3. TBB has failed to establish state a claim upon which relief can be granted for Breach of Fiduciary Duties count.

In addition, TBB claims that Mr. Valencia incurred in "gross negligence" in his role of as Activo (TBB) executive. However, TBB does not alleges sufficient facts to "make out a cognizable claim." *Carroll v. Xerox Corp.*, 294 F.3d 231, 241 (1st Cir. 2002). TBB does not alleges enough facts to establish a claim under Puerto Rico corporate law nor under the Civil Code or Puerto Rico. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. As a result, TBB has failed to establish state a claim upon which a relief can be granted for this count.

### III. CONCLUSION

To sum up, TBB invites this Court to make inferences of an incomplete complaint, by asserting that the events related in the complaint will reveal a complex fraudulent scheme without providing the specificity required to meet the RICO pleading standard, and specifically establishing that Mr. Corredor and/or Mr. Valencia willingly committed two (2) or more predicate acts of a racketeering activity and/or that they agreed to assist or to act on behalf of the enterprise. *See Feinstein,* 942 F.2d at 42 ("It is not enough for a plaintiff to file a RICO claim, chant the statutory mantra, and leave the identification of predicate acts to the time of trial").

In addition, TBB's state claims do not have merits since TBB's state tort claim against Mr. Corredor and Mr. Valencia is time barred, and also, it did not establish the elements of unjust enrichment claim. Therefore, this Court should decline to exercise supplemental jurisdiction over TBB's state claims. As the Firs Circuit has point out "it is the plaintiff's burden to take the step which brings his case safely into the next phase of the litigation. The court need not conjure up unpled allegations or contrive elaborately arcane scripts in order to carry the blushing bride through the portal." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988). See also, *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 80 (1st Cir. 2014) (citing *Rodríguez-Machado v. Shinseki,* 700 F.3d 48, 50 (1st Cir.2012) (In regards to the Rule 12(b)(6) inquiry, "[j]udges are not like pigs, hunting for truffles"). Accordingly, Codefendants Mr. Corredor and Mr. Valencia respectfully move this Court to dismiss the instant complaint in its entirety.

**WHEREFORE**, it is respectfully requested that the complaint be dismissed for failure to state a federal claim and the pendent claims are time barred or insufficiently pled. Defendants also request that this Court awards attorney's fees and costs.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this September 25, 2023.

**IT IS HEREBY CERTIFY** that this motion was submitted using the CM/ECF system which will send a notification to all attorneys of record.

**BELLVER ESPINOSA LAW FIRM**
Condominio El Centro I, Suite 801
500 Muñoz Rivera Avenue
San Juan, Puerto Rico 00918
Tel (787) 946-5268/Fax (787)946-0062

*S/Alejandro Bellver Espinosa*
Alejandro Bellver Espinosa, Esq.
U.S.D.C. – P.R. 225708
Email: alejandro@bellverlaw.com
