IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| TBB INTERNATIONAL BANK CORP.,<br><br>    PLAINTIFF,<br><br>V.<br><br>JOSÉ ANTONIO OLIVEROS FEBRES CORDERO; ALEJANDRO J. VALENCIA HURTADO; HOLDING ACTIVO LTD.; ALEXANDRA OLIVEROS FEBRES CORDERO; MARÍA EUGENIA FEBRES CORDERO ZAMORA; JOSÉ ANTONIO OLIVEROS MORA; GORLIO ENTERPRISES LTD.; EL RETIRO GROUP LTD.; AIB PROPERTIES LIMITED LTD.; DON GOYO CORPORATION AVIATION; INVERSIONES SAITAM, S.A.; CONSULTORA BARU 2018, C.A.; GUSTAVO JOSÉ GERARDO CORREDOR SALCEDO; ALEJANDRO ENRIQUE MONTENEGRO DÍAZ; INVERSIONES ELEKTROGORSK, C.A.; INTELINVEST CASA DE VALORES, S.A.,<br><br>    DEFENDANTS. | CASE NO. 23-CV-01310 (ADC) |

### JOSÉ ANTONIO OLIVEROS FEBRES CORDERO AND HOLDING ACTIVO LTD'S JOINT MOTION TO DISMISS

**TO THE HONORABLE COURT:**

**COMES NOW**, Defendants, Jose Antonio Oliveros Febres Cordero ("Oliveros"), and Holding Activo, Ltd. ("Activo"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(6) jointly move to dismiss Plaintiff TBB International Bank Corp.'s ("TBB") Complaint for failure to state a claim upon which relief should be granted.

### I.    PROCEDURAL BACKGROUND

On June 12, 2023, TBB filed its ambitious yet unmeritorious Complaint against Defendants José Antonio Oliveros Febres Cordero; Alejandro J. Valencia Hurtado; Holding Activo Ltd.; Alexandra Oliveros Febres Cordero; María Eugenia Febres Cordero Zamora; José Antonio

Oliveros Mora; Gorlio Enterprises Ltd.; El Retiro Group Ltd.; AIB Properties Limited Ltd.; Don Goyo Corporation Aviation; Inversiones Saitam, S.A.; Consultora Baru 2018, C.A.; Gustavo José Gerardo Corredor Salcedo; Alejandro Enrique Montenegro Díaz; Inversiones Elektrogorsk, C.A.; and Intelinvest Casa de Valores, S.A., (Docket No. 1).

The Complaint alleges violations of the RICO statute, pursuant to 18 U.S.C. § 1962(c) and (d) against all the above-captioned defendants (*See* Docket No. 1 at ¶234-264). The Complaint further alleges various violations of Puerto Rico Laws, specifically for fraud and fraud in the inducement against all the defendants (Docket No. 1 at ¶265-277), unjust enrichment against all the defendants (Docket No. 1 at ¶278-299), breach of fiduciary duties against Oliveros and Alejandro J. Valencia Hurtado (Docket No. 1 at ¶300-302), and collection of monies against Oliveros (Docket No. 1 at ¶303-307).

On September 25, 2023, codefendant's Gustavo Jose Gerardo Corredor-Salcedo and Alejandro J. Valencia-Hurtado filed their joint Motion to Dismiss the Complaint for failure to State a Claim.[1] (Docket No. 24)[2].

---

[1] The motion to dismiss alleges various grounds for dismissal: (1) TBB's failure to comply with the stringent pleading standard for RICO claims; (2) failure to comply with the statute of limitations as it relates to the TBB's Puerto Rico Fraud claims. More specifically, as to the RICO claims, the motion to dismiss at docket no. 24, correctly asserts that the complaint fails to allege discrete acts of mail or wire fraud, transportation of stolen money, including the time, place, and nature of the alleged predicate acts. Additionally, Plaintiff fails to establish closed ended [or open ended] continuity sufficient to show a pattern of racketeering. Moreover, the state claims for fraud and fraud in the inducement are time bared, the state claim for unjust enrichment are vague and conclusory and are based on contractual agreements. (See Docket No. 24 p.2-3, 18).

[2] Defendants Oliveros and Activo expressly join the motions to dismiss filed by their codefendants to the extent the arguments set forth therein apply to their own case. (See Docket Nos. 24, 30, and 54.) Their contents are fully incorporated by reference as if set forth herein.

On October 25, 2023, Defendants Don Goyo Corporation Aviation, Gorlio Enterprises Ltd., Alexandar Oliveros-Febres-Cordero filed their joint Motion to Dismiss.³ (Docket No. 30). On March 15, 2024, Defendant's AIB Properties Limited Ltd., El Retiro Group Ltd., Maria Eugenia Febres-Cordero-Zamora, and Jose Antoinio Oliveros-Mora filed their joint motion to dismiss. (Docket No. 54). On June 20, 2024, Activo filed its Rule 7.1 Statement. (Docket No. 65).

## II.   STANDARD OF REVIEW UNDER RULE 12(B)(6)

An evaluation of a motion to dismiss under Rule 12(b)(6) requires the court to "accept as true 'all well-pleaded factual averments and indulg[e] all reasonable inferences in the [plaintiffs'] favor.'" *Doyle v. Hasbro*, Inc., 103 F.3d 186, 190 (1st Cir. 1996) (quoting *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). Dismissal under Rule 12(b)(6) is appropriate only if the facts alleged, taken as true, do not establish a basis for recovery. *Aulson*, 83 F.3d at 3. In order to survive a motion to dismiss, plaintiffs must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988). Although all inferences must be made in the plaintiff's favor, the court is not required to accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson*, 83 F.3d at 3.

The Supreme Court decision in *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), further refines this standard by requiring that a complaint must "provide the grounds of his entitlement

---

[3] The Motion to Dismiss correctly points out practical issues with the Complaint. For one, the Complaint lumps all 16 Defendants together and fails to specifically delineate which defendants are responsible for specific acts. Similar to Docket No. 24, this Motion to Dismiss correctly argues that the RICO claims fail for a various reason: (1) lack of requisite continuity for racketeering activity, (2) the fact that there is only one alleged victim, which counsels against a finding of continuity, (3) and an overall failure to comply with the RICO pleadings standard.

3

[with] more than labels and conclusions." Accordingly, in order to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Torres v. Bella Vista Hosp., Inc.*, 523 F. Supp. 2d 123, 133 (D.P.R. 2007) (quoting Twombly, 550 U.S. at 555, 570) (citation omitted). Although Twombly was initially decided in the antitrust context, the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009), clarified that this standard applies universally across all civil actions.

To further assess the sufficiency of the complaint, a two-pronged analysis is applied. Under the two-step "plausibility" standard established by *Twombly*, the Court in considering a motion to dismiss must first "accept as true all of the allegations contained in a complaint [,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court "need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" *Maldonado v. Fontanes*, 568 F.3d 263, 266 (1st Cir. 2009) (quoting *Iqbal*, 556 U.S. 678). Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Iqbal*, 556 U.S. 679.Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41(1st Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged —but has not 'show[n]' 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." *Id*. at 685 (citing *Twombly*, 550 U.S. at 567).

Furthermore, when the complaint alleges claims of fraud, as in this case, they are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). *See Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996). Federal Rule of Civil Procedure 9(b), requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Ultimately, to state a claim for fraud or misrepresentation, the pleader "must state the **who, what, where, and when** of the allegedly misleading representation with particularity." *Ezell v. Lexington Ins. Co.*, 926 F.3d 48, 51 (1st Cir. 2019) (emphasis ours). One of the main purposes of the rule is to apprise the defendant of fraudulent claims and of the acts that form the basis for the claim. *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985). Where, as here, "fraud lies at the core of the action, [Rule 9(b) does not permit a complainant to file suit first, and subsequently to search for a cause of action." *Lopez v. Bulova Watch Co., Inc.*, 582 F.Supp. 755, 766 (D.R.I.1984) (citations omitted)(emphasis ours).

The First Circuit has interpreted Rule 9(b) to require "specification of the time, place, and content of an alleged false representation." *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193 (1st Cir. 1999)(quoting *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir.1980)). Moreover, "[e]ven where allegations are based on information and belief, supporting facts on which the belief is founded must be set forth in the complaint. This holds true even when the fraud relates to matters peculiarly within the knowledge of the opposing party." *Hayduk*, 775 F.2d at 444.

This heightened pleading requirement holds particularly true in the case of RICO claims, as the First Circuit has reiterated "that RICO pleadings of mail and wire fraud must satisfy the particularity requirements of Rule 9(b)." *Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997) (citing *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 42 (1st Cir. 1991)). *See also MCDP*

5

*Phoenix Servs. PTE Ltd. v. First Fin. Int'l Bank, Inc.*, Civil No. 21-1534 (JAG), 2023 WL 2652644, at*3 (D.P.R. Mar. 27, 2023) ("Due to the exceptional nature of the statute, complaints that allege a RICO claim must comply with uniquely stringent pleading standards to survive a motion to dismiss."); *Latin Am. Music Co. v. Disco Hit Productions*, Civil 02-1788 (ADC), 2006 WL 8449986, at 15 (D.P.R. June 19, 2006) (where RICO complaint is based on predicate acts of wire fraud, "the pleadings must meet both the heightened scrutiny applied to RICO claims and the Rule 9(b) particularity requirement.").

In *Miranda v. Ponce Federal Bank*, 948 F.2d 41, 44 (1st Cir. 1991), the First Circuit described the standard against which pleadings in a civil RICO complaint must be measured upon a Court's determination of a Rule 12(b)(6) motion to dismiss:

> For one thing, the complaint must be anchored in a bed of facts, not allowed to float freely on a sea of bombast. That is to say, a court assessing a claim's sufficiency has no obligation to take matters on blind faith; despite the highly deferential reading which we accord a litigant's complaint under Rule 12(b)(6), we need not credit bald assertions, periphrastic circumlotions, unsubstantiated conclusions, or outright vituperation. For another thing, in cases alleging civil RICO violations, particular care is required to balance the liberality of the Civil Rules with the necessity of preventing abusive or vexatious treatment of defendants. Civil RICO is an unusually potent weapon — the litigation equivalent of a thermonuclear device. The very pendency of a RICO suit can be stigmatizing, and its consummation can be costly; a prevailing plaintiff, for example, stands to receive treble damages and attorney's fees. See 18 U.S.C. § 1964(c). For these reasons, it would be unjust if a RICO plaintiff could defeat a motion to dismiss simply by asserting an inequity attributable to a defendant's conduct and tacking on the self-serving conclusion that the conduct amounted to racketeering. Hence, to avert dismissal under Rule 12(b)(6), a civil RICO complaint must, at a bare minimum, state facts sufficient to portray (i) specific instances of racketeering activity within the reach of the RICO statute and (ii) a causal nexus between that activity and the harm alleged.

*Dibbs v. Gonsalves*, 921 F. Supp. 44, 49-50 (D.P.R. 1996).

### III.     FACTUAL ALLEGATIONS[4]

At all times relevant to the Complaint, Plaintiff was doing business under Activo PR and was authorized under the laws of Puerto Rico to accept and demand fixed-term deposits, as well as interbank deposits from non-Puerto Rico residents. (Docket No. 1, ¶ 81). Plaintiff was wholly owned by Activo, an entity organized, existing, and doing business under and by virtue of the laws of Barbados. (*Id*. at ¶ 82). Oliveros, and codefendants Valencia, Montenegro, Anaheim Equities Corp., Daniel Yepez Gonzalez, Jose Miguel Contreras Santos, and Miguel Edwardo Archilla Morales were the shareholders of Activo at all times relevant to this action. (*Id*. at ¶ 82). Plaintiff claims that the defendants engaged in three distinct schemes of which it was a victim.

The first scheme is identified as the credit facility and loan scheme. Plaintiff alleges Oliveros would approve loans or letters or credit to customers in his capacity as a director of the bank only to have those customers then transfer the proceeds of those loans or credit facilities either directly to Oliveros or to entities related-to or controlled by him. (*Id*. at ¶ 103.) The only example the plaintiff provides, however, relates to a loan extended to Customer A on February 9, 2017. (*Id*. at ¶ 98.) The proceeds of that loan were allegedly wired to Gorlio Enterprises, a company owned by Oliveros' mother and sister. (*Id*. at ¶ 99.) The Plaintiffs do not allege **any** misrepresentation or false statement in relation to this loan.

The second scheme is identified as the prepaid services scheme. Plaintiff alleges that Oliveros and Valencia executed service contracts with Inversiones Saitam and Cosultora Baru to provide services to Plaintiff by means of a prepaid services agreement. (*Id*. at ¶107). Plaintiffs claim the prepaid services were not rendered as agreed. Instead, the funds of the prepayments made by the bank to Inversiones Saitam and Consultora Baru were transferred to accounts related to

---

[4] Nothing in this section shall be deemed an admission that a particular allegation is true.

and/or under the control of Oliveros, such as Gorlio Enterprises and AIB Properties Limited. (*Id.*) Allegedly, the Defendants and non-party co-conspirators withheld crucial information from the Plaintiff, hindering its ability to oversee and prevent such disadvantageous arrangement. As is the case with the first scheme, the Plaintiffs do not allege **any** misrepresentation or false statement in relation to this loan made by any defendant or any so-called "non-party coconspirator."

The third and final scheme is identified as the bank assets as collateral scheme. This scheme allegedly involved diverting the Bank assets to collateralize loans for the Defendants' benefit through third party financial institutions and standby letters of credit against the assets of the Bank. (*Id*. at ¶133). As an example, Plaintiff alleges the bank extended a standby letter of credit to Gorlio Enterprises to guarantee payment for a loan with a third-party lender. (*Id.* at ¶136.) Gorlio Enterprises ultimately defaulted on the loan and the bank paid out the amount due. (*Id.* at ¶136.) The plaintiff also raises similar allegations regarding Intelinvest Casa de Valores SA; Inverisones Elektrogorsk, C.A.; and Holding Activo Ltd. (*Id.* at ¶¶ 141-169.) Plaintiffs similarly fail to provide detail regarding the fraudulent nature of these transactions.

Plaintiff alleges these funds were used to feed the fraud cycle of the different schemes. However, the precise roles of each defendant in these schemes and their specific actions facilitating them are not clearly delineated.

### IV.   ARGUMENT

Plaintiff's RICO claims are predicated upon alleged violations of 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d). In order to prevail in a civil RICO claim under 18 USC § 1962(c), a plaintiff typically needs to establish: (1) the engagement in conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity or a single collection of an unlawful debt. *Int'l. Floor Crafts, Inc. v.*

*Dziemit*, 420 F. App'x 6, 12 (1st Cir. 2011). Moreover, the Plaintiff must demonstrate that their business or property suffered injury as a direct result of the violation of 18 USC § 1962.

The First Circuit consistently maintains that a civil RICO claim under 18 USC § 1962(c) hinges upon meeting four essential elements. The first element, "conduct," mandates that the defendant be associated with or employed by an enterprise affecting interstate or foreign commerce. The second element, "of an enterprise," necessitates proving the existence of an "enterprise" as defined in 18 U.S.C. § 1961(4). The third element, "through a pattern," obligates the plaintiff to demonstrate at least two instances of "racketeering activity" under 18 U.S.C. § 1961(1). To establish a "pattern," the plaintiff must demonstrate that the related predicate acts amount to or pose a threat of continued criminal activity, which can be shown through either "closed" or "open-ended" continuity. *Dibbs v. Gonsalves*, 921 F. Supp. 44 (D.P.R. 1996). Lastly, the fourth element, "of racketeering activity," requires establishing that the defendant knowingly and willfully participated in the scheme with an intent to defraud. As it relates to the predicate acts of mail and wire fraud, the First Circuit has articulated specific criteria requiring: (1) the execution of a scheme to defraud, (2) knowing and willful involvement in the scheme with an intent to defraud, and (3) the use of the mails or interstate wires to further the scheme. *Dziemit*, at 13. The Plaintiff alleges that Oliveras and his codefendants engaged in three schemes to deceive the Plaintiff.

The Complaint suffers from multiple legal failings. Generally, it fails to plead fraud with particularity; fails to allege two or more predicate acts or racketeering; and fails to adequately allege continuity of a "pattern of racketeering activity." At the outset, it should be stated that in order to avert dismissal under Rule 12(b)(6), a civil RICO complaint must, at a bare minimum, state facts sufficient to portray (i) specific instances of racketeering activity within the reach of the

9

RICO statute and (ii) a causal nexus between that activity and the harm alleged. *Miranda v. Ponce Federal Bank*, 948 F.2d 41, 44 (1st Cir. 1991). The Complaint fails to allege distinct or additional damages as a result of investment of racketeering income. Second, Plaintiff separately pleaded RICO claims fail to sufficiently allege a "pattern" of racketeering activity with respect to each claim based on alleged acts of mail and wire fraud. Plaintiffs' non-RICO claims also fail to state a claim insofar as they are time-barred.

### A. Plaintiff's complaint fails to comply with Federal Rule of Civil Procedure 9(b).

"RICO pleadings of mail and wire fraud must satisfy the particularity requirements of Rule 9(b)." *Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997) (citing *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 42 (1st Cir. 1991)). *See also MCDP Phoenix Servs. PTE Ltd. v. First Fin. Int'l Bank, Inc.*, Civil No. 21-1534 (JAG), 2023 WL 2652644, at*3 (D.P.R. Mar. 27, 2023) ("Due to the exceptional nature of the statute, complaints that allege a RICO claim must comply with uniquely stringent pleading standards to survive a motion to dismiss."); *Latin Am. Music Co. v. Disco Hit Productions*, Civil 02-1788 (ADC), 2006 WL 8449986, at 15 (D.P.R. June 19, 2006) (where RICO complaint is based on predicate acts of wire fraud, "the pleadings must meet both the heightened scrutiny applied to RICO claims and the Rule 9(b) particularity requirement."). [5]

The viability of **all** of Plaintiff's claims against Oliveros and Holding require the Court to

---

[5] Thus, in the RICO context, "Rule 9(b) calls for the complaint to 'specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.' … The plaintiffs must also 'identify the purpose of the mailing within the defendant's fraudulent scheme.'" *Alejandro-Martinez v. Ortiz-Vazquez*, Civil No. 10-1541(CCC), 2011 WL 4807714, at *3 (D.P.R. Oct. 11, 2011) (cleaned up). *See Puerto Rico Medical Emergency Group, Inc. v. Iglesia Episcopal Puertorriqueña, Inc.*, 118 F. Supp.3d 447, 457 (D.P.R. 2015) (dismissing RICO claim which failed to allege the "specific dates" of the mails and wires, the "specific persons" who sent them and the "places from which or to where the invoices were sent.").

find that the defendants defrauded Plaintiff in relation to the three schemes set forth in the complaint . Federal Rule of Civil Procedure 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b).  One of the main purposes of the rule is to apprise the defendant of fraudulent claims and of the acts that form the basis for the claim. *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985). Where, as here, "**fraud lies at the core of the action**, [Rule 9(b) does not permit a complainant to file suit first, and subsequently to search for a cause of action." *Lopez v. Bulova Watch Co., Inc.,* 582 F.Supp. 755, 766 (D.R.I.1984) (citations omitted)(emphasis ours).

The First Circuit has interpreted Rule 9(b) to require "specification of the time, place, and content of an alleged false representation." *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193 (1st Cir. 1999)(quoting *McGinty v. Beranger Volkswagen, Inc.,* 633 F.2d 226, 228 (1st Cir.1980)). Moreover, "[e]ven where allegations are based on information and belief, supporting facts on which the belief is founded must be set forth in the complaint. And this holds true even when the fraud relates to matters peculiarly within the knowledge of the opposing party." *Hayduk,* 775 F.2d at 444. Finally, and perhaps most importantly, rule 9(b)'s requirements apply to both general claims of fraud and also to "**associated claims**," such as Plaintiff's, "**where the core allegations effectively charge fraud**." *Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 21–22 (1st Cir. 2017)(quoting *North Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 15 (1st Cir. 2009))(emphasis ours).

Merriam-Webster's dictionary defines fraud as the "intentional perversion of truth in order to induce another to part with something of value or to surrender a legal right."[6] Black's Law

---

[6]  *Fraud,* Merriam-Webster Dictionary (2024), https://www.merriam-webster.com/dictionary/fraud#word-history.

Dictionary similarly defines fraud as "some deceitful practice or willful device, resorted to with intent to deprive another of his right, or in some manner to do him an injury."[7] Here, even a cursory review of the nature of the three schemes set forth in the complaint prompt the conclusion that they all allege the same general conduct—fraudulent misrepresentations made to the bank in order to secure credit facilities or funds that were ultimately diverted to some of the defendants.

When reviewing Plaintiff's complaint, the Court will readily glean that the details of the fraudulent misrepresentations that set the three alleged schemes in motion are wholly absent. The assertions are generalized, failing to specify the exact time, location, and nature of alleged illegal activities, or identify the defendants involved in each offense, specifically. Instead of providing concrete evidence, Plaintiff relies on unsubstantiated arguments and vague allegations about various schemes involving money transfers, neglecting the required level of detail. The only details set forth in the complaint are the dates on which loans were approved by the bank. However, there is not one scintilla of detail regarding the false assertions that led to the procurement of those credit facilities, or the award of the contracts to the participants in the prepaid services scheme, or the collateralization of the bank's assets. This is wholly improper and requires dismissal of the action in its entirety.

### B. Plaintiff's complaint fails to plead an enterprise distinct from its members.

"[T]to establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). Formal "(as when there is incorporation)" or practical "(as when there are people besides the

---

[7] *Fraud,* Black's Law Dictionary, Free (2nd ed., 2024), https://thelawdictionary.org/fraud/.

proprietor working in the organization)" separateness is sufficient to be distinct under Section 1962(c). *United States v. London*, 66 F.3d 1227, 1245 (1st Cir. 1995) (internal citation omitted); *accord Cedric Kushner Promotions, Ltd.*, 533 U.S. at 163 (internal citation omitted). Distinctness between the defendant and the enterprise is lacking **only** when there is complete identity between the two, as a defendant can be part of an enterprise that is broader than a single defendant—such as an association-in-fact enterprise. *See*, *e.g.*, *United States v. Goldin Indus., Inc.*, 219 F.3d 1271, 1276 (11th Cir. 2000) (holding that "the fact that each corporation was a defendant 'person' and also part of the union of corporations which was the enterprise does not as a matter of law preclude a conviction"); *United States v. Fairchild*, 189 F.3d 769, 776-777 (8th Cir. 1999) (finding that charging Gruber and his associates as persons and as an enterprise was proper because none of the defendants was "singularly" charged as an enterprise); *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 262-63 (2d Cir. 1995) (concluding that the defendant, who was an officer, agent, and owner of two corporations, was distinct from the RICO enterprise consisting of the defendant and the corporations).

The term "enterprise," as used in the RICO statutes, includes association-in-fact enterprises which are defined as "a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 946 (2009) (internal citation omitted). The Supreme Court has set forth a test to be used to determine the sufficiency of an association-in-fact enterprise. Namely, "an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* The First Circuit has elaborated on these concepts as follows:

> As to [1] — purpose — the group must share the common purpose of engaging in a course of conduct. As to [2] —relationship — there must also be evidence of interpersonal relationships calculated to effect that purpose, *i.e.*, evidence that the group members came together to advance a certain object or engag[e] in a course of conduct. And as to [3] — longevity — the group must associate based on its shared purpose for a sufficient duration to permit an association to participate in [the enterprise's affairs] through a pattern of racketeering activity, though nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence.

*United States v. Rodriguez-Torres*, 939 F.3d 16, 24 (1st Cir. 2019) (citations and quotation marks omitted). Those associated in fact must "'function as an ongoing unit' and constitute an 'ongoing organization.'" *United States v. Cianci*, 378 F.3d 71, 82 (1st Cir. 2004) (internal citation omitted). The enterprise, however, "need not be formal or have an 'ascertainable structure.'" *United States v. Connolly*, 341 F.3d 16, 25 (1st Cir. 2003) (internal citation omitted).

"[T]he enterprise must be distinct from the pattern of racketeering activity." *United States v. Nascimento*, 491 F.3d 25, 32 (1st Cir. 2007) (internal citation omitted). "An enterprise is chiefly distinguished from the pattern of racketeering activity by the fact that it possesses some goal or purpose more pervasive and more enduring than the instant gratification that can accrue from the successful completion of each **particular criminal act**." *Id.* (internal citation omitted) (emphasis ours). And while the existence of the enterprise is a distinct element from the pattern of racketeering activity, the Supreme Court has recognized that the existence of the enterprise may be inferred from the pattern of racketeering activity because "the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise 'may in particular cases coalesce.'" *Boyle*, 556 U.S. at 947 (internal citation omitted); *accord United States v. Patrick*, 248 F.3d 11, 19 (1st Cir. 2001) (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)) ("While

14

'enterprise' and 'pattern of racketeering activity' are separate elements of a RICO offense, proof of these two elements need not be separate or distinct but may in fact 'coalesce.'"). "The existence of an association-in-fact is oftentimes more readily proven by what it does, rather than by abstract analysis of its structure." *Boyle* 556 U.S. at 951 (holding that "the trial judge did not err in instructing the jury that 'the existence of an association-in-fact is oftentimes more readily proven by what is [sic] does, rather than by abstract analysis of its structure'").

The Complaint here fails to plead facts that establish that the members of the alleged enterprise had a common purpose. The complaint sets forth three schemes with different participants and different modes of operation without establishing how these schemes all furthered the purposes of the enterprise. Similarly, but for generally pleading some familial relationship between some of the defendants, the Complaint does not explain how the members of the enterprise are all related so as to properly form an association-in-fact. Finally, and as will be more fully briefed below, the complaint fails to establish the requisite longevity because its members only acted within a brief time frame and did not engage in a prolonged pattern of racketeering activity. The Complaint must therefore be dismissed.

### C. *Plaintiff's complaint fails to plead a pattern of racketeering activity.*

Section 1961(5) of the RICO statute defines a "'pattern of racketeering activity . . . as two or more 'racketeering acts' that were related, occur within ten years of one another, and pose a threat of continued criminal activity.'" *United States v. Ramos-Baez*, 86 F.4th 28, 45 (1st Cir. 2023) (quoting *United States v. Millán-Machuca*, 991 F.3d 7, 18 (1st Cir. 2021) and citing 18 U.S.C. § 1961(5)). Section 1961(1) of the statute, in turn, provides that racketeering activity includes wire fraud. *See* 18 U.S.C. § 1961(1); *see also* 33 L.P.R.A. § 5261; 18 U.S.C. § 1951; and 18 U.S.C. § 1343. Establishing a pattern sufficient to state a claim under RICO requires that plaintiffs allege

"continuity plus relationship." *H. J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (internal citation omitted). The alleged acts of racketeering must be "both related and amount to or pose a threat of continued criminal activity." *Lerner v. Colman*, 26 F.4th 71, 84 (1st Cir. 2022) (internal citations omitted) (cleaned up).

The Supreme Court and our Court of Appeals "have declined to spell out specifically how many predicate acts, or how long the racketeering has to endure, for a plaintiff to satisfactorily allege the pattern requirement." *Home Orthopedics Corp. v. Rodríguez*, 781 F.3d 521, 529 (1st Cir. 2015). The Supreme Court has, however, elected to define continuity, or a threat of continuity, of racketeering activity as "referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H. J. Inc.* at 241 (1989) (internal citation omitted).

To allege closed-ended continuity, "[a] party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *Id.* at. 242. In determining whether there is closed-ended continuity, courts are not limited to looking only at the predicate acts; "rather, a court should consider the totality of the circumstances surrounding the commission of those acts." *Heinrich v. Waiting Angels Adoption Servs.*, 668 F.3d 393, 410 (6th Cir. 2012) (internal citation omitted). Notably, to determine continuity in a RICO claim predicated on wire fraud, a court can consider the overall nature of the underlying-fraudulent scheme. *See Tabas v. Tabas*, 47 F.3d 1280, 1294 (3d Cir. 995). More specifically, the continuity test **requires that the Court look beyond the wires and examine the underlying scheme or artifice** because "the instances of deceit constituting the underlying fraudulent scheme are more relevant to the continuity analysis." *Id.* Consequently, in

16

determining whether continuity has been established, a court should focus on the duration of the underlying scheme. *Id.*

Alternatively, under open-ended continuity, "[a] RICO pattern may surely be established if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit." *H. J. Inc.*, 492 U.S. at 242. Accordingly, a small number of related predicates involved occurring close together in time may supply the require threat of continuity when: "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future or are part of an ongoing entity's regular way of doing business." *Home Orthopedics Corp*, 781 F.3d at 531 (internal citation omitted) (cleaned up).

Here, the complaint fails to allege any predicate acts, much less related predicate acts over a long period of time. The complaint likewise fails to allege that there was an ongoing threat of continuous criminal activity. Here, the only allegations in the complaint that bear any detail are the dates of certain approvals of loans and/or credit facilities and the date of certain wire transfers. However, these acts are not obviously illegal. Approval of a loan is a perfectly legal act, as is the transfer of funds. Plaintiff fails to allege how these loans were fraudulently procured and how the acts of the defendants meet the statutory elements of wire fraud. This is true for all three of the schemes. The Complaint must have, at a minimum, detailed the scheme and artifice to defraud the bank, how the scheme and artifice employed wires in furtherance thereof, and the fraudulent statements/misrepresentations that led to the execution of the scheme. The complaint fails to detail one, much less multiple, instance of fraudulent representations. This falls woefully short of stating

a claim of wire fraud sufficient to support a cause of action under civil RICO. Accordingly, the plaintiff's complaint must be dismissed.[8]

### D. Plaintiff's state law fraud causes of action fail as time barred.

Article 1204 of the Puerto Rico Civil Code of 2020 (previously Article 1868 of the 1930 code) sets a one-year statute of limitations for personal injury claims. *See* Article 1868 of the Civil Code of Puerto Rico of 1930, P.R. Laws Ann. Tit. 31, § 5298; Article 1204 of the Puerto Rico Civil Code of 2020, P.R. Laws Ann. Tit. 31, § 9496. The Puerto Rico Supreme Court has repeatedly held that the statute of limitations for personal injury claims falls under the cognitive theory of damages ("teoría cognoscitiva del daño"). *See Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 D.P.R. 365, 374 (2012). In other words, the statute of limitations begins to accrue when the plaintiff knew or should have known of the harm suffered, the parties responsible for that harm, and any other necessary element to effectively commence a cause of action. *See COSSEC et al. v. González López et al.*, 179 D.P.R. 793, 805 (2010); *Toledo Maldonado v. Cartagena Ortiz*, 132 D.P.R. 249, 254–255 (1992). The one-year statute of limitations applies to all of the plaintiff's state law fraud claims.

In the complaint, Plaintiff admits it new or at minimum has suspicions regarding the Defendants and non-party co-conspirators as early as March 2020. Therefore, given the one-year statute of limitations for damages, claims under Article 1536 of the Puerto Rico Civil Code, the claim is time-barred and must be dismissed, as the complaint was not brought until June 12, 2023.

---

[8] Insofar as the plaintiff's claims for substantive RICO violations fail, their conspiracy claim fails as a matter of law. Moreover, the Court should decline to exercise jurisdiction over the remaining state law claims.

**WHEREFORE**, defendants Oliveros and Activo request that the Honorable Court GRANT this motion.

**I HEREBY CERTIFY** that, in accordance with Federal Rule of Civil Procedure 5, a true and correct copy of the foregoing has been furnished via CM/ECF to all appearing parties or their attorneys by way of their designated emailed addresses on this 29th day of July 2024.

Respectfully submitted on this 29th day of July 2024, at San Juan, Puerto Rico.

> DMR Law LLC
> Attorneys for defendants Jose Antonio Oliveros Febres and Holding Activo Ltd.
> Capital Center
> 239 Arterial Hostos
> Suite 1101
> San Juan, PR 00918
> Tel. 787-331-9970
>
> *s/ Maria A. Dominguez-Victoriano*
> Maria A. Dominguez-Victoriano
> USDC-No. 210908
> m.dominguez@dmrpr.com