## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

TBB INTERNATIONAL BANK CORP.,

     **Plaintiff,**

     **v.**

**JOSE ANTONIO OLIVEROS-FEBRES CORDERO, ET AL.,**

     **Defendants.**

**Civil No. 23-1310 (ADC)**

### OPINION AND ORDER

Pending before the Court are three motions to dismiss filed by co-defendants Gustavo José Gerardo Corredor-Salcedo and Alejandro J. Valencia-Hurtado, Alexandra Oliveros-Febres-Cordero, Gorlio Enterprises Ltd., Don Goyo Corporation Aviation, El Retiro Group Ltd., AIB Properties Limited Ltd., María Eugenia Febres-Cordero-Zamora, and José Antonio Oliveros-Mora. **ECF Nos. 24, 30, 54**.

Also before the Court is co-defendant's Holding Activo Ltd. motion to set aside default entry and a request for extension of time to answer the complaint. **ECF Nos. 64**, **66**.

For the reasons stated herein, the motions to dismiss at **ECF Nos. 24, 30, 54** are **GRANTED** in **PART** and **DENIED** in **PART**. The motion to set aside default entry and the motion for extension of time at **ECF Nos. 64** and **66** are **GRANTED**.

## I.    Factual and procedural background

### A.    Plaintiff

Activo International Bank, Inc. ("Bank") was an international bank organized in Puerto Rico. **ECF No. 1** at 4-5. Holding Activo Ltd. ("Holding Activo") was the sole shareholder of the Bank. Co-defendant Antonio Oliveros-Febres-Cordero ("Oliveros") controlled Holding Activo. In 2020, the Office of the Commissioner of Financial Institutions of Puerto Rico ("OCFI") issued an Emergency Consent Order ("Emergency Order") ordering the Bank to adopt and implement a Restructuring Plan. *Id*. The Emergency Order set parameters to reestablish normal operations, including the Bank's obligations to its depositors and other creditors. Among the requirements of the Bank's proposed restructuring plan was the removal of co-defendants Oliveros and Alejandro J. Valencia Hurtado ("Valencia") from the management and/or ownership of the Bank. *Id*. On March 6, 2020, the OCFI lifted the Emergency Order and accepted the restructuring plan. *Id*.

Plaintiff TBB International Bank Corp. ("TBB" or "plaintiff") is an international bank licensed by the OCFI. **ECF No. 1** at 1-2. In 2020, Plaintiff took over the Bank.[1]

### B.    The complaint

Plaintiff filed the instant complaint against sixteen defendants alleging that they knowingly, willingly, and recklessly engaged in a scheme to deceive plaintiff's predecessor (the Bank), its depositors, and other third parties of millions of dollars. *Id*. The complaint includes

---

[1] The complaint offers little details of the events leading to the takeover.

claims under Racketeer Influenced & Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et. seq.*, and Puerto Rico law.

Specifically, plaintiff alleges that defendants committed repeated predicate acts of wire fraud, mail fraud, and money laundering in furtherance of their fraudulent scheme, engaged in theft by deception and other illicit activities. *Id.*, at 2. More specifically, plaintiff claims that defendants acted in concert with each other and with multiple non-party co-conspirators to perpetrate the alleged scheme, which left the Bank with no funds to repay all depositors or employees. *Id.*

According to plaintiff, defendants made arrangements under certain credit facilities to transfer the funds to accounts in their control to cover other illegal transactions, and to ultimately benefit defendants, their relatives, and close associates in violation of federal and state banking regulations. *Id*. They also concocted an "arrangement that inextricably depends upon the supposed lawfulness of the imposition of prepaid services charges and that further enables the schemers to take a cut out of the prepaid services charges they impose on the Bank." *Id*, at 3. Moreover, defendants allegedly misused their position and authority to divert assets to "collateralize loans for the [d]efendants' benefit through third-party financial institutions and standby letters of credit against the assets of the Bank." *Id*. To feed these schemes, defendants maintained a stream of funds available by allowing existing credit facilities of related persons and/or entities (including several co-defendants) to increase the credit facilities. *Id.*, at 3. Plaintiff claims that "each aspect of the scheme modalities involves multiple false representations,

concealment, and predicate acts of racketeering." *Id.*, at 3-4. In light of such schemes, plaintiff claims that defendants incurred in "racketeering activity of the first order." **ECF No. 1** at 14.

According to the complaint, defendants intervened at different stages and played different roles in the schemes. **ECF No. 1** at 14-16. To wit, four co-defendants, Oliveros, Valencia, Alejandro Enrique Montenegro-Díaz, and Holding Activo Ltd., are sued for their actions as parties that either worked for or had ownership interest in the Bank. A second cluster of seven co-defendants, José Antonio Oliveros-Mora ("Oliveros-Mora"), María Eugenia Febres-Cordero-Zamora ("María Eugenia Febres"), Alexandra Oliveros, Don Goyo Corporation Aviation ("Don Goyo"), Gorlio Enterprises Ltd. ("Gorlio"), and AIB Properties Limited Ltd. ("AIB") are held accountable because they are relatives of Olivero that had control over entities that carried out part of the unlawful activity. *Id.* Moreover, Gustavo José Gerardo Corredor-Salcedo is Valencia's relative and control over ("Corredor"), Inversiones Saitam, S.A., Consultora Baru 2018, C.A. These co-defendants are charged for their putative control over several entities that allegedly participated in the schemes. Finally, plaintiff included Inversiones Elektrogorsk, C.A. and Intelinvest Casa de Valores, S.A. as named defendants although they seemingly participated in only minor roles. *Id.*

Plaintiff seeks declaratory relief and money damages for defendants' violations of 18 U.S.C. § 1962(c) and (d), breach of fiduciary duties, unjust enrichment, tort, fraud and fraud in the inducement.

### C.    Pending motions

Several co-defendants moved to dismiss in three separate motions. **ECF Nos. 24, 30, 54**. Plaintiff opposed. **ECF Nos. 35, 41, 58**. On June 18, 2024, the Court granted in part and denied in part a motion for entry of default filed by plaintiff against Holding Activo Ltd. **ECF No. 62**. Two days later, Holding Activo Ltd. moved to set aside the entry of judgment, logged its corporate disclosure statement, and moved for an extension of time to file an answer to the complaint. **ECF Nos. 64, 65, 66**.

## II.    Legal standard

It is well settled that in reviewing a motion for failure to state a claim upon which relief can be granted, the Court accepts "as true all well-pleaded facts alleged in the complaint and draw[s] all reasonable inferences therefrom in the pleader's favor." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 52–53 (1st Cir. 2013) (citation and internal quotation marks omitted). Only "[i]f the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

The First Circuit established a two-prong test to evaluate "plausibility" under Fed. R. Civ. P. 12(b)(6). *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (discussing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)("*Iqbal*") and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)("*Twombly*")). First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz v.*

*Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678-79.

Second, the court must then "take the complaint's well-[pleaded] (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Schatz*, 669 F.3d at 55. Plausible "means something more than merely possible." *Id*. (citing *Iqbal*, 556 U.S. at 678-79). To survive a Rule 12(b)(6) motion, a plaintiff must allege more than a mere "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

## III.    Discussion

### A.    Defendants' motions to dismiss and plaintiff's oppositions

#### (i)    Valencia and Corredor's motion to dismiss and plaintiff's response

Co-defendants Valencia and his brother-in-law, Corredor, moved to dismiss the complaint for failure to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6). They argue that the complaint fails to meet RICO's "stringent" pleading standard and that the remaining Puerto Rico law claims are time-barred. **ECF No. 24**. To wit, these two co-defendants argue that the complaint fails to plead "discrete acts of mail or wire fraud, transportation of stolen money and/or money laundering, including the time, place, and nature of the alleged predicate acts." *Id*., at 2. Moreover, they argue that plaintiff did not "particularize any factual events where Mr. Corredor and/or Mr. Valencia committed at least two [] predicate acts of racketeering activity[,]"

and that the well-pleaded allegations do not include allegations of a "closed-ended continuity sufficient to show a pattern of racketeering activity by either appearing codefendant." *Id*. In any event, according to Corredor and Valencia, plaintiff points to "no more than a single effort to facilitate a single financial endeavor to affect a single victim," nor does it state that they "agreed personally to commit two or more predicate crimes to assist or to act on behalf of the alleged enterprise." *Id*.

Valencia and Corredor also move to dismiss claims borne out of Puerto Rico's general tort statute on statute of limitations grounds. **ECF No. 24** at 17-20. They also question the sufficiency of those allegations in relation to the unjust enrichment and breach of fiduciary duties claims. *Id*.

In response, plaintiff argues that it need not prove that the defendants have had "any personal involvement in initiating the wire transfers," but only that their use was a foreseeable part of the scheme in which they took part. **ECF No. 35** at 7-8. This requirement is met, according to plaintiff, by pleading that Oliveros and/or Valencia approved the loans or letters of credit or transfers of funds that resulted from the prepaid services scheme. *Id*., at 8-9. Likewise, plaintiff alleges that these transfers of funds were made through several international entities to and from the Bank's accounts which satisfies the interstate commerce element. *Id*., at 11-13. In sum, plaintiff argues that the well-pleaded allegations suffice to state a claim because they plead that Valencia controlled the Bank and orchestrated the scheme, while Corredor managed the entities

that purportedly provided overpriced services in exchange for the prepayments that ultimately benefited other defendants and related parties. *Id*., at 13.

Furthermore, plaintiff sustains that the complaint meets the pleading standard in connection with the existence of a pattern of racketeering activity by alleging that Valencia's conduct spanned at least five years and included various illegal acts perpetrated while he was acting as director, shareholder, and officer of the Bank. *Id*., at 16. On the other hand, Corredor's conduct spanned at least three years and encompassed various illegal acts including more than two interstate wire transactions during that time. *Id*. Plaintiff raises similar augments to negate Valencia and Corredor's averments challenging their participation and knowledge in the operation and management of the enterprise. **ECF No. 35** at 18-19.

Alternatively, plaintiff posits that Valencia and Corredor did not properly challenge their liability under RICO conspiracy, § 1962(b), or that their actions easily fall under the "conspiracy" modality. If the Court were to find that the complaint lacks specificity as to its RICO claims, plaintiff argues that under *New England Data Services, Inc. v. Becher*, 829 F.2d 286 (1st Cir. 1987) the Court should allow limited discovery before dismissing the claims because the information is in "exclusive control" of the defendants. *Id*., at 13.

As to the state claims statute of limitations challenge, plaintiff stayed relatively quiet. Although it emphasized the "secretive" nature of the unlawful conduct, it failed to propose a timeline or an approximate date on which it became aware or should have known of the necessary elements for its cause of action. **ECF No. 35** at 22-23. The only direct response from

plaintiff was a statement asserting that "[i]t was not until TBB's new management (which had no connection with the previous management of the Bank by Oliveros and Valencia) took the reins of the Bank that it could begin to assemble an initial explanation of the dire financial situation of the Bank and the reasons behind it." *Id*., at 23-24.

> (ii)    **Alexandra Oliveros, Gorlio, and Don Goyo's motion to dismiss and plaintiff's response**

Co-defendants Alexandra Oliveros-Febres-Cordero (hereinafter "Alexandra Oliveros"), Gorlio Enterprises Ltd. (hereinafter "Gorlio"), and Don Goyo Corporation Aviation, separately moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). **ECF No. 30**. They attack the complaint as a whole by pointing to plaintiff's unspecific use of the defined term "Defendants." *Id*., at 6-7. Next, they challenge the sufficiency and viability of the RICO claims because there are no well-pleaded allegations of "continuity." *Id*., at 14. Specifically, they argue that the well-pleaded allegations identify only a single victim: TBB. *Id*.

Co-defendant Alexandra Oliveros points out that the complaint does not pinpoint the dates in which she allegedly participated of the predicate acts. Moreover, she claims, even assuming the allegations sufficiently address the "when" of her role, "to defraud one victim while committing… two predicate acts… over several years" does not meet RICO's continuity demands. *Id*. Further, she argues that the complaint includes self-defeating allegations since the majority of plaintiff's claims charge her brother, Oliveros, as the person with real control over

the corporations and even her personal actions, which suffices to merit dismissal in her favor under the "operation and management test." *Id*., at 15 and 17.

Co-defendant Gorlio, on the other hand, argues that even assuming the predicate acts constitute RICO conduct, they amount to eight predicate acts over a 21-month period "with no threat of continued acts in the future." *Id*., at 15. Thus, Gorlio sustains, the complaint fails to meet the continuity bar. Similarly, co-defendant Don Goyo argues that the predict acts where he is identified, even if true and otherwise RICO sufficient, amount to ten predicate acts in a span of 12 months against one victim. *Id*., at 16. In his opinion, the allegations contain no threat of future harm and, thus, fail to clear the "continuity" hurdle. *Id*.

Finally, these co-defendants also attack plaintiff's state law claims because they are all rooted in Puerto Rico's general tort statute or otherwise have the same one-year statute of limitations. Co-defendants argue that these claims are time-barred since plaintiff failed to identify a single act or conduct that took place after June 2022. *Id*., at 18.

In its response, plaintiff rejects Gorlio and Don Goyo's argument and counter that the allegations show that they "themselves… []as opposed to other defendants[,] committed the predicate acts." **ECF No. 41** at 4. It also argues that, based on the available information, the allegations meet the applicable pleading exigencies. Specifically, it argues that the complaint includes enough well-pleaded allegations to meet RICO's continuity test because the predicate acts in the complaint are all "related" and extend over a substantial period of time. *Id*., at 9-11. "Considering that there is no rule on how many predicate acts, or how long the racketeering has

to endure, for a plaintiff to allege the pattern requirement satisfactorily, the Complaint suggests the kind of ongoing criminal behavior at which the RICO statute was aimed based on a natural and commonsense approach." *Id*., at 11. It also maintains that the allegations state several victims including the Bank, depositors, and employees.

As to the time-bar argument against the Puerto Rico law-based claims, plaintiff says basically nothing. As a matter of fact, its response to Alexandra Oliveros, Gorlio, and Don Goyo is practically a copy and paste of its response to the similar argument raised by Valencia and Corredor in their motion to dismiss. *Compare* **ECF No. 41** at 15 *with* **ECF No. 35** at 22-23. To wit, aside from repeating that defendants went to great lengths to cover their tracts, plaintiff fails to even provide the Court with an estimate or a date when they learned of the acts or omissions that substantiate their state law claims, nor does plaintiff identify a single allegation to that end.

**(iii)    ERG, AIB, María Eugenia Febres, and Oliveros Mora's motion to dismiss and plaintiff's response**

El Retiro Group Ltd. ("ERG"), AIB Properties Limited Ltd. ("AIB"), María Eugenia Febres Cordero Zamora ("Ms. Febres"), and José Antonio Oliveros Mora ("Oliveros-Mora"), also moved to dismiss the complaint. **ECF No. 54**. These co-defendants since represented by the same counsel, filed a very similar (nearly identical) motion to dismiss as the one submitted by co-defendants Alexandra Oliveros, Gorlio, and Don Goyo.

To wit, ERG, AIB, María Eugenia Febres, and Oliveros-Mora also argue that plaintiff use of the defined term "defendants" is improper in this case and that, even then, the schemes

described in the complaint only include one victim and thus fail to meet RICO's "continuity." **ECF No. 54** at 14. ERG argues that the complaint only ascribes liability to it because of its putative corporate relationship to AIB. *Id*., at 15. Yet, ERG argues, "the complaint does not adequately connect any AIB misconduct to ERG." *Id*. Therefore, ERG should not be penalized for AIB's actions. Moreover, ERG claims that the complaint fails to explain how and when it participated in the predicate acts. *Id*., at 15-16. Even assuming the little information provided suffices to find RICO predicate acts, "three actions against one victim in what would appear to be a short amount of time with no threat of continued harm must fail any continuity analysis." *Id*., at 16. The same argument goes for AIB: "Five acts against one victim in a short amount of time with no threat of additional harm simply fails the continuity test." *Id*., at 16 ("The analysis is not much different for AIB").

María Eugenia Febres and Oliveros-Mora, parents of co-defendant Oliveros, argue that the allegations are self defeating because most of the allegations claim that Oliveros controlled everything. *Id*., at 17-18. Moreover, assuming that the allegations are true, the two or three predicate acts included in the complaint taken "in… a short amount of time against one victim with no risk of future harm must fail RICO's continuity requirement." *Id*.

As an alternate ground for dismissal of the RICO claims, these co-defendants argue that the complaint fails to plead the RICO "conduct" element. *Id*., at 20. They make this claim under the notion that none of the allegations can survive the "operation and management test." *Id*. "Even the most favorable reading of those allegations cannot lead to a plausible finding that

either [] [María Eugenia] Febres or [] Oliveros[-]Mora operated or managed the alleged RICO enterprise… If anything, [the complaint] describes how their son (Oliveros) may have operated or managed the supposed RICO enterprise." *Id*.

Finally, ERG, AIB, María Eugenia Febres, and Oliveros-Mora move for dismissal of all relevant state law claims. *Id*., at 21. Similar to the arguments raised in the other two motions to dismiss, they too argue that such claims are time-barred.

Plaintiff's response (**ECF No. 58**) to ERG, AIB, María Eugenia Febres, and Oliveros-Mora's motion to dismiss is basically the same as its response to Alexandra Oliveros, Gorlio, and Don Goyo's motion discussed above. *See* **ECF No. 41**. Importantly, consistent with its previous filings, plaintiff did not raise a single argument to show that the state law claims are not time barred. **ECF No. 58** at 15-17.

### B.    RICO and *Becher* discovery overview

The Racketeer Influenced & Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, was enacted to support the federal government's "war against organized crime[.]" *United States v. Turkette*, 452 U.S. 576, 587 (1981). In its civil modality, RICO requires four basic elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Generally, racketeering activity encompasses numerous illegal acts including mail and wire fraud, 18 U.S.C. §§ 1341, 1343, which are relevant predicate acts here. However, isolated instances of racketeering do not suffice. To wit, "[a] pattern of racketeering activity requires at least two predicate acts of racketeering within ten years of each

other." *United States v. Rodriguez-Torres*, 939 F.3d 16, 29 (1st Cir. 2019). These predicate acts must also be related and "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989); *Efrón v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 15 (1st Cir. 2000)("to prove a "pattern"—the plaintiff also must demonstrate that the "predicates are related, *and* that they amount to or pose a threat of continued criminal activity.")(emphasis in the original).

To plead a proper RICO claim "by way of wire fraud, a plaintiff must allege that a group of defendants engaged in a scheme to defraud with the specific intent to defraud and that they used ... the interstate wires in furtherance of the scheme." *Cordero-Hernández v. Hernández-Ballesteros*, 449 F.3d 240, 243 (1st Cir. 2006)(quoting *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 790 (1st Cir.1990)). Fraud allegations raise the stakes pleading-wise. Instead of the regular Fed. R. Civ. P. 8 standard, fraud claims activate the more stringent Fed. R. Civ. P. 9(b) under which the "pleader is required to go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communications perpetrating that fraud." *N. Bridge Assocs., Inc. v. Boldt,* 274 F.3d 38, 43 (1st Cir. 2001)(internal quotation marks omitted).

Meeting this standard is often difficult. *Cordero-Hernández*, 449 F.3d at 243 ("it will often be difficult for a plaintiff to plead with specificity when the facts that would support her claim are solely in the possession of a defendant.") (quoting *New England Data Services, Inc. v. Becher*, 829 F.2d 286 (1st Cir. 1987). Thus, the First Circuit generally allows courts to grant "limited

discovery in order to give a plaintiff an opportunity to develop the claim and amend the complaint." *Id*.

Plaintiff highlights the fact that "defendants are in exclusive control of crucial information that furthers their illegal acts and racketeering activity." **ECF No. 35** at 13. Thus, in the alternative, it moved for "an opportunity to conduct discovery…." *Id*. As to this particular issue, the First Circuit recently reiterated that:

> where allegations supporting a RICO claim do not satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b), a court should not automatically dismiss the claim. Instead, if the complaint raises specific allegations... that make it likely that the defendant used interstate mail or telecommunications facilities and the court finds specific information as to use of interstate mail or telecommunications is likely in the exclusive control of the defendant, the court should make a second determination as to whether the claim as presented warrants the allowance of discovery.

*Efrón v. UBS Financial Services Incorporated of Puerto Rico*, 96 F.4th 430, 436 (1st Cir. 2024)(cleaned up).

Even though *Becher* discovery is not automatic, *see Cordero-Hernández*, 449 F.3d at 244, at this stage, the Court finds that the complaint includes at least *some* specific allegations that make it likely that some co-defendants used interstate mail or telecommunications facilities and that such specific information is likely in the exclusive control of the defendants.

Accordingly, the motions to dismiss at **ECF Nos. 24, 30, 54** are **DENIED WITHOUT PREJUDICE** as to plaintiff's RICO claims. The Court hereby orders the parties to conduct limited *Becher* discovery according to the schedule and instructions provided hereinbelow.

**C.    Puerto Rico claims subject to a one-year statute of limitation**

Puerto Rico's general tort statute is codified in Article 1536 of Puerto Rico Civil Code (2020), which repealed its predecessor Article 1802 of the Puerto Rico Civil Code (1930)(repealed), PR Laws Ann. Tit. 31, § 10801. The current version of the Puerto Rico Civil Code, Act No. 55 of June 1, 2020, codified as 31 L.P.R.A. § 5311 *et seq.*, entered into force on November 28, 2020, but has no official English translation. *See Rivera-Rosario v. LSREF2 Island Holdings, Ltd., Inc.*, 79 F.4th 1, 5 n. 1 (1st Cir. 2023). Regardless, as it did in the past, the new Civil Code establishes a one-year statute of limitations for tort-based actions, as well unjust enrichment, fraud, and other non-contractual claims. *See* Article 1868, PR Laws Ann. Tit. 31, § 5298 (repealed).

As correctly noted by plaintiff, to determine when the statute of limitations begins to run courts apply the "cognitive theory… which is when the claimant knew or should have known, that they suffered any injury, who caused it, and the elements necessary to be able to pursue their cause of action effectively." **ECF No. 41** at 14 (citing *Barretto Peat, Inc. v. Luis Ayala Colón Sucrs., Inc.*, 896 F.2d 656, 658 (1st Cir. 1990)). Plaintiff added, the "First Circuit has previously stated that the specific knowledge of the tort in question consists of knowledge of the injury and the person who caused it." *Id* (citing *Hodge v. Parke Davis & Co.*, 833 F.2d 6, 7 (1st Cir. 1987)). Thus, as suggested by plaintiff, not every tortious conduct that took place before June 2022 (a year before the filing of the complaint) is automatically time-barred.[2] Since *all* the allegedly

---

[2] Plaintiff does not suggest that the Puerto Rico one-year statute of limitation was tolled extrajudicially or otherwise.

unlawful conduct described in the complaint falls outside the one-year statute of limitation (before June 2022), the Court must first ask: when does the one-year time bar begin to run for each claim?

Unfortunately for plaintiff, its arguments do not provide an answer to the question. Plaintiff's silence on this issue is fatal for several reasons. First, it is fatal because plaintiff is the only party capable of explaining to the Court when it first acquired knowledge of the injury, the person who caused it, and the right to seek redress. *See Rodríguez-Surís v. Montesinos*, 123 F.3d 10, 13 (1st Cir. 1997). Indeed, "civil liability will expire and become legally unenforceable one year from the time the aggrieved person had knowledge thereof." *Alejandro-Ortiz v. Puerto Rico Elec. Power Authority (PREPA)*, 756 F.3d 23, 27 (1st Cir. 2014). A plaintiff would be deemed to have "knowledge" when it knows about "both the injury and of the identity of the person who caused it." *Id*. (quoting *Colón Prieto v. Géigel*, 15 P.R. Offic. Trans. 313, 330–31 (1984)).

Second, unlike the RICO claims, this issue did not require discovery. Plaintiff did not need answers to interrogatories or deposition testimony to explain when *it* became aware of the conduct described in the complaint or to expound on the efforts it made to learn about defendants' conduct. Indeed, "either actual knowledge… or constructive knowledge… []where [plaintiff] would have been aware of such facts, had she engaged in due diligence[,] can trigger the statute of limitations." *Meléndez Colón v. Rosado Sánchez*, 995 F.3d 262, 267 (1st Cir. 2021). Thus, "[i]n determining a plaintiff's knowledge, the relevant inquiry is whether a putative plaintiff knew or with due diligence would have known 'the facts that gave rise to the claim, not

their full legal implications.'" *Id.*, (quoting *Villarini-García v. Hosp. Del Maestro, Inc.*, 8 F.3d 81, 84 (1st Cir. 1993)).

Third, it was plaintiff's legal burden to explain to the court when it acquired "cognoscitive knowledge" under Puerto Rico law. *Alejandro-Ortiz*, 756 F.3d at 27 ("[i]f a plaintiff brings an action more than a year after the injury took place, she bears the burden of proving that she lacked the requisite 'knowledge' at the relevant times.") (quoting *Hodge v. Parke Davis & Co.*, 833 F.2d 6, 7 (1st Cir. 1987)); *Calderón Amézquita v. Rivera-Cruz*, 483 F.Supp.3d 89, 104 (D.P.R. 2020)(When plaintiff brings an action more than a year after the injury took place, he "bears the burden of proving that [he] lacked the requisite 'knowledge' at the relevant times.")(cleaned up); *Rodríguez-Surís v. Montesinos*, 123 F.3d at 13 ("Plaintiff bears the burden of proving when the damage became known."); *see also Rivera-Encarnación v. Estado Libre Asociado de Puerto Rico*, 13 P.R. Offic. Trans. 498, 501–02, 113 D.P.R. 383 (1982).

Finally, plaintiff did not argue that any delay is attributable to defendants' representations or assurances. To boot, plaintiff did not proffer evidence "sufficient to support a finding that representations and assurances by the defendant persuaded plaintiff to rely reasonably and delay institution of a civil action." *Calderón Amézquita*, 483 F.Supp.3d at 105 (quoting *Rodríguez Surís*, 123 F.3d at 14). Aside from repeating that defendants carried out the complained-of transactions under the guise of legal business transactions, plaintiff does not claim that it failed to timely file its claims due to "the assurances of the person who caused the injury." *Rodríguez Surís*, 123 F.3d at 14.

Plaintiff's superficial contention that it does not know the full extent of defendants' actions is not relevant for present purposes. *See Delgado-Rodríguez v. Nazario de Ferrer*, 21 P.R. Offic. Trans. 342, 356 (P.R. May 16, 1988)("we have stated that there must necessarily exist some outward or physical signs through which the aggrieved party may become aware and realize that he has suffered an injurious aftereffect, which when known becomes a damage even if at the time its full scope and extent cannot be weighed. These circumstances need not be known in order to argue that the damage has become known, because its scope, extent, and weight may be established later on during the prosecution of the remedial action.")(quoting H. Brau del Toro, *Los Daños y Perjuicios Extracontractuales en Puerto Rico* 639–40, Pub. J.T.S., Inc. (2d ed.1986)(internal quotation marks omitted)).

To be sure, the allegations in the complaint charge defendants with unlawful conduct that apparently ended in 2020 when plaintiff took over the Bank. **ECF No. 1** at 25 ("…on May 4, 2020, the Bank changed its name to TBB International Bank Corp. The restructuring also resulted in a change in control of the previously named parties."). Plaintiff does not explain when between May 2020 and June 2023 (when it filed the complaint) it acquired the information that made it aware of the liable conduct, the damage, and the identity of the tortfeasors for any of its claims. Instead, as explained before, in all three responses plaintiff simply stated that "[i]t was not until TBB's new management… took the reins of the Bank that it could begin to assemble an initial explanation of the dire financial situation of the Bank and the reasons behind it." *Id*., at 23-24. But even then, plaintiff took over the "reins" of the Bank three years and one month before

filing this action. *See Calderón Amézquita*, 483 F.Supp.3d at 104 ("Due diligence does not mean waiting for answers to fall from the sky-it requires reasonable, active efforts to seek answers and clarify doubts. Plaintiffs are expected to 'promptly assert their rights' when faced with facts that create a 'reasonable basis for concern' about negligence.") (quoting *Estate of Alicano Ayala v. Philip Morris, Inc.*, 263 F. Supp. 2d 311, 317 (D.P.R. 2003)).[3]

Accordingly, plaintiff's state claims subject to a one-year statute of limitations, including its tort, fraud, unjust enrichment claims are hereby **DISMISSED WITH PREJUDICE** pursuant to Fed. R. Civ. P. 12(b)(6).

## IV.    Conclusion

Accordingly, the motion to dismiss at **ECF Nos. 24, 30, 54** are **GRANTED IN PART and DENIED IN PART**. Plaintiff's state law claims are dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6). The motion to set aside default entry and the motion for extension of time at **ECF Nos. 64 and 66** are **GRANTED**.

The parties are hereby ordered to conduct limited *Becher* discovery to be concluded by no later than November 25, 2024.

---

[3] Although plaintiff did not raise the issue or included any discussion on a different test, the Court notes that some courts in this District have applied a heightened dismissal standard under Fed. R. Civ. P. 12(b)(6) to motions filed on time-bar grounds. *See e.g. López–Rivera v. Hospital Auxilio Mutuo, Inc.*, 290 F.Supp.3d 137, 141 (D.P.R. 2017). Even if that was the applicable standard, for the reasons explained above, there is no doubt that the asserted claims are time-barred. Plaintiff did not single out an allegation in the complaint that would convince the Court otherwise.

The case is hereby referred to Magistrate Judge Giselle López-Soler pursuant to Fed. R. Civ. P. 72(a) to oversee, schedule, and **decide** all discovery related matters. Plaintiff shall file an amended pleading by December 20, 2024, if any.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 22nd day of August, 2024.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**