IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| TBB International Bank Corp.,<br><br>                Plaintiff,<br><br>                v.<br><br>José Antonio Oliveros Febres Cordero; Alejandro J. Valencia Hurtado; Holding Activo Ltd.; Alexandra Oliveros Febres Cordero; María Eugenia Febres Cordero Zamora; José Antonio Oliveros Mora; Gorlio Enterprises Ltd.; El Retiro Group Ltd.; AIB Properties Limited Ltd.; Don Goyo Corporation Aviation; Inversiones Saitam, S.A.; Consultora Baru 2018, C.A.; Gustavo José Gerardo Corredor Salcedo; Alejandro Enrique Montenegro Díaz; Inversiones Elektrogorsk, C.A.; Intelinvest Casa de Valores, S.A.,<br><br>                Defendants. | Civil Case No. 23-CV-01310 (ADC) |

**OPPOSITION TO *JOSÉ ANTONIO OLIVEROS FEBRES CORDERO AND HOLDING ACTIVO LTD'S JOINT MOTION TO DISMISS***

TO THE HONORABLE COURT:

    COMES NOW, Plaintiff TBB International Bank Corp. ("TBB") through the undersigned counsel, and respectfully states and prays as follows:

    **I.    Introduction**

    Defendants José Antonio Oliveros Febres Cordero and Holding Activo, Ltd. (hereinafter, "Oliveros" and "Holding Activo," respectively) filed a *Joint Motion to Dismiss* ("Motion to Dismiss") pursuant to Fed. R. Civ. P. 12(b)(6), for allegedly failing to state a claim upon which relief can be granted. *See* Docket No. 71. Oliveros and Holding Activo are deeply entrenched in the alleged racket and breaches of duty alleged in the Complaint. The pleadings, as to Oliveros and Holding Activo, easily satisfy the requirements under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and Fed. R. Civ. P. 8(a), 9(b), and 12(b)(6).

The Complaint provides exceptionally specific detail (including as to Oliveros and Holding Activo) in stating the factual allegations that establish each element of the asserted causes of action. Oliveros and Holding Activo, as well as the other defendants and co-conspirators, are intricately intertwined. They have the same leaders, connect through ownership and management of entities, share operations, and relentlessly pursue the same unlawful purposes. Together, they have engaged in a multi-faceted scheme violating the Racketeer Influenced and Corrupt Organizations Act ("RICO") and committing other statutory and common law wrongs against TBB. As will be shown in this response, TBB sufficiently alleged its Complaint. Accordingly, Oliveros and Holding Activo's Motion to Dismiss should be denied.

## II.    Standard of Review

TBB asserts claims against Oliveros and Holding Activo for violation of RICO (Count I), conspiracy to violate RICO (Count II), fraud and fraudulent inducement (Count III), and unjust enrichment (Count IV), among others. To assert these claims, the Federal Rules of Civil Procedure establish that a plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, when a motion to dismiss for failure to state a claim is filed under Fed. R. Civ. P. 12(b)(6), the Court must "accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff[ ]." *Gargano v. Liberty Int'l Underwriters, Inc.*, 572 F.3d 45, 48-49 (1st Cir. 2009). Pursuant to *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), in order to 'show' an entitlement to relief, a complaint must contain enough factual material to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact). *Id*. Accordingly, a claimant is required to present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). *Twombly*, 550 U.S. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Under the standard established by *Twombly* and *Iqbal*, the Court's inquiry, when analyzing a motion to dismiss, is a two-step process. First, the Court must "accept as true all of the allegations contained in a complaint." *Iqbal*, 556 U.S. at 678; *Mead v. Independence Ass'n*, 684 F.3d 226, 231 (1st Cir. 2012). Second, the Court must determine whether the complaint "states a plausible claim for relief." *Iqbal*, 556 U.S. at 679. This step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.*; *see also*, *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009). To meet the requirements of this context-based analysis, the claimant must allege sufficient facts to comply with the basic elements of the cause of action—if that requirement is met, a motion to dismiss cannot be granted, regardless of how unlikely recovery may ultimately be. *See Iqbal*, 556 U.S. at 671-672; *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely.'")

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incredible." *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010) (citing *Twombly*, 550 U.S. at 556). Thus, the First Circuit has emphasized that "[t]he make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, [rather than] not a merely conceivable, case for relief." *Id.* at 29. Indeed, the "court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Ocasio-Hernandez*, 640 F.3d at 12 (citing *Twombly*, 550 U.S. at 556).

As will be discussed in detail below, the factual allegations set forth in the Complaint clearly and adequately plead plausible claims for relief as to each cause of action, and, therefore, the Motion to Dismiss should be denied.

II.    **Legal Argument**

A.    **TBB Sufficiently Alleged a RICO Claim Under 18 U.S.C. § 1962(c).**

A RICO complaint under § 1962(c) need only identify "(1) conduct (2) of an enterprise (3) through a pattern of racketeering activity." *N. Bridge Assocs., Inc. v. Boldt*, 274 F.3d 38, 42 (1st Cir.2001); *Lerner v. Colman*, 26 F.4th 71, 77 (1st Cir. 2022). The RICO claim is thoroughly pleaded. The Complaint painstakingly alleges the associations among the defendants and conspirators, the components of the enterprise, the continuance of the scheme, the actions in furtherance of the enterprise, and the impact on TBB.

1. **TBB has Adequately, Plausibly, and Specifically Pleaded a Racketeering Act.**

Oliveros and Holding Activo instead make a minimally supported argument that the Complaint does not allege with particularity under Rule 9(b) that Oliveros and Holding Activo themselves committed predicate acts. (*See* Motion to Dismiss at p. 12.) Oliveros and Holding Activo misconstrue both the law and the allegations.

The law is well established on pleading wire fraud as RICO predicate acts. The plaintiff does not need to prove that the defendant has had any personal involvement in initiating the wire transfers; instead, the use of the wires need only have been a reasonably foreseeable part of the scheme in which he participated. *United States v. Vázquez–Botet*, 532 F.3d 37, 63–64 (1st Cir.2008). In this case, it could reasonably be foreseen by Oliveros and Holding Activo that they and/or the other defendants would use wire transfers to move around the funds to perpetrate the fraudulent schemes. The Complaint details how, in the Credit Facility and Loan Scheme, funds were transferred through the bank accounts of different defendants to ultimately benefit Oliveros, its related entities, and close associates. *See* Docket No. 1 ¶¶ 98-104. Oliveros and/or Defendant Alejandro Valencia ("Valencia") approved the loans or letters of credit that provided the funds in their official capacity as directors and officers of the Bank. *Id.,* ¶ 103. In addition, in the Bank Assets as Collateral Scheme Oliveros and Valencia misused their

4

position and authority to collateralize loans at third-party financial institutions with the Bank's assets. They transferred the borrowed funds from third-party financial institutions, guaranteed with the Bank's assets, through electronic payment. The defendants deposited the borrowed funds from third-party financial institutions, which were guaranteed with the Bank's assets, into bank accounts located in Puerto Rico. *Id.,* ¶¶ 133-167. All of these uses of the wire transfers were in furtherance of the defendants' fraudulent schemes.

The "key question" in assessing pleadings is whether each defendant is given sufficient notice of their respective roles in order that they may answer the complaint. *Westernbank Puerto Rico v. Kachkar*, No. CV 07-1606 (ADC), 2009 WL 10681037, at *4 (D.P.R. Aug. 20, 2009); *Corporación de Seguros v. Reyes–Muñoz*, 826 F.Supp. 599, 609 (D.P.R.1993) (sustaining complaint under Rule 9(b) where the plaintiff "pled other important details which should serve to put defendants on notice of the claims being asserted against them"). As for the degree of particularity required, allegations must contain the facts describing the time, place, and contents of the false representations. *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 288 (1st Cir.1987). However, where an alleged scheme of fraud involves numerous transactions that occur over a long period, relaxing the Rule 9(b) standard may be appropriate because pleading the precise specifics regarding every instance of fraudulent conduct may be impractical. *Marrero-Rolon v. Autoridad de Energia Electrica de P.R.*, No. CIV. 15-1167 JAG/SCC, 2015 WL 5719801, at *13 (D.P.R. Sept. 29, 2015), report and recommendation adopted, No. CV 15-1167 (JAG), 2016 WL 9459821 (D.P.R. Mar. 31, 2016). A plaintiff pleading wire fraud must allege (1) a scheme to defraud, (2) the defendant's knowing participation in that scheme, and (3) the use of the wires. *United States v. Hebshie*, 549 F.3d 30, 35 (1st Cir.2008).

The specific allegations of wire fraud against Oliveros and Holding Activo fully satisfy these requirements. The Complaint alleges in excess of two predicate acts by Oliveros and Holding Activo, which can be grouped into different categories, as shown non-exhaustively below.[1]

(1)    The Complaint identifies one transfer of funds transmitted by wire from Customer A to Gorlio Enterprises Ltd. ("Gorlio"), wholly co-owned by Ms. María Eugenia Febres-Cordero ("Ms. Febres-Cordero"). (*See* Docket No. 1 ¶ 99). Those funds were then subsequently transferred by wire from Gorlio to Oliveros. (*Id.*) Oliveros utilized an unrelated account to obtain financing from the Bank to circumvent the prohibition contained in Act 52. (*Id.,* ¶ 102). The allegations state who sent them (Customer A and Gorlio), when they were sent (on or around March 22, 2017), how they were sent (interstate wires), and how they were in furtherance of the scheme (they were a consequence of the false representations and as result of the effort to circumvent the prohibition of an international bank granting financing to its shareholders, directors, officers, or employees without authorization of the Puerto Rico Office of the Commissioner of Financial Institutions ("OCFI")). This is a predicate act by Oliveros using Gorlio and Ms. Febres-Cordero as vehicles to commit it under 18 U.S.C. §1343.

(2)    The Complaint identifies one transfer of funds transmitted by wire from the Bank to a third-party financial institution as a result of a loan obtained by Gorlio (wholly co-owned by Ms. Febres-Cordero) and collateralized with the Bank's assets. (*See* Docket No. 1 ¶¶ 136-140). The collateralization was not approved by the Bank's Board of Directors. (*Id.,* ¶ 136). The funds obtained through the loan were used by Gorlio, Oliveros, and related companies for their benefit. (*Id.,* ¶ 139). The allegations state who sent them (the Bank), who received them (a third-party financial institution), when they were sent (on or around December 2019), how they were sent (interstate wires), and how they were in furtherance of the scheme (they were a consequence of the false representations and as result of the effort to

---

[1] The below narrative describes examples of predicate acts alleged in the Complaint, but is not exhaustive of all the predicate acts comitted by the defendants.

collateralize loans at third-party financial institutions with the Bank's assets). This is a predicate act by Oliveros using Gorlio and Ms. Febres-Cordero as vehicles to commit it under 18 U.S.C. §1343.

(3) The Complaint identifies one transfer of funds transmitted by wire from Intelinvest Casa de Valores, S.A. ("Intelinvest") to Holding Activo Ltd.'s ("Holding Activo") account as a result of a loan collateralized with the Bank's investment portfolio. (*See* Docket No. 1 ¶ 146). The loans were never registered in the Bank's books per the orders of Valencia, in his capacity as President of the Bank, and fulfilled by non-party conspirator Lawrenz González ("González"), as Operations Manager of the Bank. (*Id.,* ¶ 166). Non-party conspirator Francisco Vizcarrondo ("Vizcarrondo") was a transaction facilitator in many instances, using batch processing to circumvent proper monitoring of illegal transactions in the Bank. (*Id.,* ¶ 70). Those funds were transferred by wire to Oliveros, Gorlio (wholly co-owned by Ms. Febres-Cordero), Inversiones Saitam, S.A. ("Inversiones Saitam"), and Valencia. (*Id.*, ¶¶ 147-149). The allegations state who sent them (Intelinvest and Holding Activo), who received them (Gorlio), when they were sent (on or around August 2017), how they were sent (interstate wires), and how they were in furtherance of the scheme (they were a consequence of the false representations and as result of the effort to collateralize loans at third-party financial institutions with the Bank's assets). This is a predicate act by Oliveros and Holding Activo using Gorlio as a vehicle to commit it under 18 U.S.C. §1343.

(4) The Complaint identifies one transfer of funds transmitted by wire from a third-party financial institution to Holding Activo's account in the Bank as a result of a loan collateralized with a Bank's certificate of deposit. (*See* Docket No. 1 ¶¶ 158 and 160). The loans were never registered in the Bank's books per the orders of Valencia, in his capacity as President of the Bank, and fulfilled by non-party conspirator González, as Operations Manager of the Bank. (*Id.,* ¶ 166). Non-party conspirator Vizcarrondo was a transaction facilitator in many instances, using batch processing to circumvent proper monitoring of illegal transactions in the Bank. (*Id.,* ¶ 70). Those funds were then subsequently transferred by wire to Gorlio, wholly owned by Ms. Febres-Cordero. (*Id.*, ¶ 160). The allegations state who sent

them (Holding Activo), who received them (Gorlio), when they were sent (on or around June 2018), how they were sent (interstate wires), and how they were in furtherance of the scheme (they were a consequence of the false representations and as result of the effort to collateralize loans at third-party financial institutions with the Bank's assets). This is a predicate act by Oliveros and Holding Activo using Gorlio and Ms. Febres-Cordero as vehicles to commit it under 18 U.S.C. §1343.

(5)     The Complaint identifies in excess of two transfers of funds initiated by wire from Don Goyo Aviation Corporation's ("Don Goyo") accounts by means of overdraft to other related and third parties. (*See* Docket No. 1 ¶¶ 216, 219-220, and 222). Don Goyo is a company wholly owned by Mr. José Antonio Oliveros-Mora ("Mr. Oliveros-Mora"), father of Oliveros. (*Id*., ¶ 215). Don Goyo's accounts were *de facto* controlled by Oliveros. *Id.,* ¶ 226. The allegations state who sent them (Don Goyo), when they were sent (between July 12 and December 17, 2018), how they were sent (interstate wires), and how they were in furtherance of the scheme (they were a consequence of the false representations and as result of the effort to transfer funds by means of overdrafts to related and third parties). Those are predicate acts by Oliveros using Mr. Oliveros-Mora and Don Goyo as vehicles to commit them under 18 U.S.C. §1343.

(6)     The Complaint alleges that the defendants (including Oliveros and Holding Activo) were transferring and/or depositing the proceeds of their schemes in financial institutions, which constitutes money laundering in violation of 18 U.S.C. § 1956. (*Id*., ¶¶ 187-189) Each transfer and/or deposit is another of Oliveros and Holding Activos's predicate acts.

(7)     The entirety of this case concerns the use of the wires to perpetuate different schemes to defraud. (*Id*., ¶¶ 172-175). The defendants, as well as their non-party co-conspirators, repeatedly and knowingly used the interstate wires to effectuate their schemes. Wire fraud occurs when interstate wires are used to further a scheme. Wire fraud is indelibly part of this case. Predicate acts are endemic.

Notwithstanding, the First Circuit has held that because it will often be difficult for a plaintiff to plead with specificity when the facts that would support its claim are solely in possession of a defendant,

8

a court faced with an insufficiently specific claim may permit limited discovery in order to give a plaintiff an opportunity to develop the claim and amend the complaint. *New England Data Services, Inc. v. Becher*, 829 F.2d 286 (1st Cir.1987). Here, defendants are in exclusive control of crucial information that furthers their illegal acts and racketeering activity. In the alternative, TBB contends that an opportunity to conduct discovery is warranted.

### 2. TBB has Sufficiently Pleaded the Existence of a Pattern of Racketeering Activity.

The RICO Act specifically enumerates what kinds of illegal acts count as "racketeering." *See* 18 U.S.C. § 1961(1). To establish a "pattern," the statute requires a plaintiff to show that at least two acts of racketeering occurred within ten years of each other. 18 U.S.C. § 1961(5). The Supreme Court has additionally required that the racketeering predicates be related and that they amount to or pose a threat of continued criminal activity. *Giuliano v. Fulton*, 399 F.3d 381, 386–87 (1st Cir.2005) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 239 (1989)).

To prove a "pattern of racketeering activity," one must show separate predicate acts that 1) are "related," and 2) "amount to or pose a threat of continued criminal activity." *H.J. Inc.*, 492 U.S. at 239. A plaintiff establishes that predicate acts are related by demonstrating that they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.,* at p. 240.

Predicate acts amount to continued criminal activity when they form a "closed period of repeated conduct," which the Court defined in *H.J.* by proving a series of related predicates extending over a substantial period of time. *Fleet Credit Corp. v. Sion*, 893 F.2d 441, 446 (1st Cir. 1990) (alleged criminal conduct spans years, not "a few weeks or months," thus sufficient to establish continuity). Both the Supreme Court and the First Circuit have declined to spell out specifically how many predicate acts, or how long the racketeering has to endure, for a plaintiff to allege the pattern requirement satisfactorily. *Home Orthopedics Corp. v. Rodriguez*, 781 F.3d 521, 529 (1st Cir. 2015). The Court just takes a natural

and commonsense approach to RICO's pattern element, to determine whether the specific fact pattern of the case before us suggests the kind of broad or ongoing criminal behavior at which the RICO statute was aimed. *Id*.

In a nutshell, Oliveros and Holding Activo basically allege that TBB failed to establish a pattern of racketeering to comply with a RICO claim. They claim the Complaint fails to allege predicate acts over a long period of time. (*See* Motion to Dismiss at p. 17).

Oliveros and Holding Activo do not contend that the separate predicate acts stated in the Complaint are related. Undoubtedly, the facts alleged in the Complaint demonstrate that the predicate acts have the same or similar purposes, results, participants, victims, or methods of commission. Thus, the first prong of the requisite to prove a "pattern of racketeering activity" has been complied with.

In addition, the predicate acts alleged in the Complaint amount to continued criminal activity because they formed a closed period of repeated conduct extending over a substantial period of time. The alleged criminal conduct of Oliveros and Holding Activo spanned a total of five years, not a few weeks or months. *See* Docket No. 1 ¶¶ 87-169. Their conduct was not sporadic activity. In the case of Oliveros, the conduct identified at the time the Complaint was filed occurred during five years and implied various illegal acts. *Id*. As for Holding Activo, the conduct identified at the time the Complaint was filed spanned at least two years and various illegal acts. *Id.,* ¶¶ 141-152, 158-169. However, it is at present unknown the extent of Oliveros and Holding Activo's participation in any of the other schemes perpetrated by the defendants that can represent more illegal acts, including wire fraud, illegal use of interstate delivery service, transport or receipt of stolen money, and money laundering.

Considering that there is no rule on how many predicate acts, or how long the racketeering has to endure, for a plaintiff to allege the pattern requirement satisfactorily, the Complaint suggests the kind of ongoing criminal behavior at which the RICO statute was aimed based on a natural and commonsense approach. Contrary to what Oliveros and Holding Activo allege, the predicate acts jointly targeted the Bank (now TBB) and its depositors and employees, as the defendants' actions and wrongdoing left the

Bank in a negative capital position with no funds to repay them. *See* Docket No. 1 ¶ 2. Oliveros and Holding Activo benefitted from those actions and wrongdoing. Due to the mismanagement and the fraudulent schemes object stated in the Complaint, on February 10, 2020, the OCFI issued an Emergency Consent Order ordering Activo PR to adopt and implement a Restructuring Plan to reestablish normal operations, thus meeting its obligations to its depositors and other creditors. *Id.*, ¶ 10. Among the requirements of the OCFI in the Restructuring Plan was removing Oliveros and Valencia from the management and ownership of the Bank. *Id.*, ¶ 15. The predicate acts targeted and affected more than one victim, but ultimately, the Bank's (now TBB) depositors, creditors, and employees as well. The series of predicate acts committed by the defendants extended to other persons or entities.

Further, the alleged conduct did not constitute a single effort to benefit Oliveros and/or entities related to or controlled by him. In the Complaint, it is alleged that it benefited other individuals as well, such as Ms. Febres-Cordero (*See* Docket No. 1 ¶ 196), El Retiro (*Id.*, ¶ 199), AIB (*Id.*, ¶¶ 125 and 200), Mr. Oliveros-Mora (*Id.*, ¶ 197), Alexandra Oliveros Febres-Cordero (*Id.,* ¶ 195), Gorlio (*Id.*, ¶ 198), Don Goyo (*Id.*, ¶¶ 201 and 224) Valencia (*Id.,* ¶¶ 83, 87, 170, and 193), Alejandro Montenegro (*Id.*, ¶ 31, 47, 156, 170, 204, and 281), and the rest of the defendants (*Id.*, ¶ 281). Moreover, the alleged conduct did not constitute a single effort, given that it encompassed three different schemes involving different individuals and entities outside Puerto Rico and the United States, which affected numerous victims, as discussed before, and benefitted all the defendants. As such, TBB sufficiently pleaded the existence of a pattern of racketeering activity.

### 3. TBB Has Sufficiently Pleaded that Oliveros and Holding Activo Participated in the Operation and/or Management of the Enterprise.

Section 1962(c) makes it unlawful for a person to "conduct, or participate in the conduct of the affairs of the enterprise" through a pattern of racketeering activity. 18 U.S.C. § 1962(c). In order to have taken part in or associated with the conduct of an enterprise, an "associate" must have had some part in directing those affairs of the enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 177-178 (1993). An

enterprise is operated not just by upper management but also by lower-rung participants in the enterprise who are under the direction of upper management. *Id*., at p. 184.

The First Circuit in *United States v. Cianci*, 378 F.3d 71 (1st Cir. 2004) stated:

> [The] requirement of association with the enterprise is not strict. The RICO net is woven tightly to trap even the smallest fish, those peripherally involved with the enterprise. The RICO statute seeks to encompass people who are merely associated with the enterprise. The defendant need only be aware of at least the general existence of the enterprise named in the indictment, and know about it related activities.

*Id*., at p. 95.

Oliveros and Holding Activo pose that the Complaint fails to plead facts that establish that the members of the alleged enterprise had a common purpose and how they are related to be properly treated as an association-in-fact. (*See* Motion to Dismiss at p. 15). However, the Complaint discusses extensively Oliveros and Holding Activo's involvement in the operation and/or management of the enterprise and how they acted on behalf of the enterprise. The defendants and their co-conspirators have had overlapping ownership, management, and financial interests, which enables them to act in concert with each other and with multiple non-party co-conspirators to perpetrate the underlying scheme. *See* Docket No. 1 ¶ 2.

Oliveros is associated with the enterprise as an owner, partner, shareholder, member, executive, or beneficiary of each of the other defendants' entities and as the primary orchestrator of the scheme. He was the ultimate beneficiary of the schemes, whether through persons or entities related to and/or controlled by him. Oliveros utilized his position as director of the Bank to authorize and conceal transactions and activities in furtherance of the schemes. He likewise shares sums of money received from the Bank. *See* Docket No. 1 ¶ 192. Oliveros is thought to have utilized the Bank, its related entities, and the bank accounts of related persons and/or entities as instruments to carry out the fraudulent schemes. *Id.,* ¶ 18. While acting as director, shareholder, and officer of the Bank, he directed and provided all necessary instructions and approvals to further the schemes. *Id.,* ¶ 47.

For example, Oliveros directed family members, Defendants Alexandra Oliveros, Ms. Febres Cordero, and Mr. Oliveros Mora, to provide their identities to open accounts and register entities under their names to transfer the funds utilized in the schemes. *Id.,* ¶ 47. Gorlio, El Retiro Group Ltd., AIB Properties Limited Ltd., and Don Goyo, entities owned by those individuals, were designed to present a false air of credibility and as a means to circumvent federal and state regulations concerning the extension of loans, credit facilities, and overdrafts. They were also used as a means to purchase and sale of real estate. *Id.,* ¶¶ 24-27, 47, 62, 114-126, 136-152, 160-163, 215. Similarly, he colluded with Defendant Valencia for the latter to use his position as an officer and director of the Bank to authorize and conceal transactions and activities in furtherance of the schemes. *Id.,* ¶¶ 19, 193. The Complaint enumerates many instances of Oliveros' participation in the enterprise and how he directed it. *See* Docket No. 1. Thus, Oliveros played a primary part in directing the affairs of the enterprise. He was aware of at least the general existence of the enterprise, knew about its related activities, and clearly acted on behalf of the enterprise.

Holding Activo is also associated with the enterprise as it served as a vehicle to perpetuate the fraud and have the aforementioned connections to other parties associated with the enterprise. It likewise shares sums of money received from the Bank. *See* Docket No. 1 ¶ 194. It is the sole shareholder of the Bank and is controlled by Oliveros. It was one of the entities utilized to carry out the previous fraudulent schemes. *Id.,* ¶ 20. The entity allowed itself to be used as a conduit of fraud and wrongdoing, as a front for Oliveros to control the illegal activities. *Id*. The entity was utilized as a conduit to perpetrate further the schemes using bank assets as collateral. *Id.,* ¶¶ 47, 141-152, 158-169. Holding Activo was fundamental to the affairs of the enterprise. Through its principals, the entity clearly acted on behalf of the enterprise.

### B.     TBB Sufficiently Pleaded its Fraud Claim, Which Is Not Time-Barred.

TBB demonstrated that its RICO causes of action have been sufficiently pleaded, conforming to the standards set forth by law and case law. Notwithstanding, the fraud state law cause of action included

in the Complaint is justified on its own merits to grant this Honorable Court subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332.

Article 1868 of the Puerto Rico Civil Code establishes a one-year statute of limitations for tort actions commencing "from the time the aggrieved person had knowledge" of the injury. P.R. LAWS ANN. tit. 31, § 5298. For determining when the statute of limitations begins to run, Puerto Rico adopts the "cognitive theory of harm," which is when the claimant knew, or should have known, that they suffered any injury, who caused it, and the elements necessary to be able to pursue their cause of action effectively. *Barretto Peat, Inc. v. Luis Ayala Colon Sucrs., Inc.*, 896 F.2d 656, 658 (1st Cir. 1990). The First Circuit has previously stated that the specific knowledge of the tort in question consists of knowledge of the injury and the person who caused it. *Hodge v. Parke Davis & Co.*, 833 F.2d 6, 7 (1st Cir.1987).

Oliveros and Holding Activo essentially claim that TBB's fraud in the inducement claim is time-barred since the statute of limitation is one (1) year for damages claims pursuant to Article 1802 of the Puerto Rico Civil Code —and their arguments largely fail. Among other allegations, TBB has claimed that the defendants concealed the architecture involved in requesting loans, credit facilities, overdrafts extended by the Bank, payments from prepaid services, and loans from third-party financial institutions using the Bank's assets as collateral, and misrepresented the real purposes for which those loans, credit facilities, and overdrafts were requested. *See* Docket No. 1 ¶ 268. Moreover, the defendants have concealed that the defendants' entities were merely sham entities in reality controlled by Oliveros and/or Valencia and have concealed their knowledge that it was illegal for Oliveros to benefit from the proceeds under the loans, credit facilities, overdrafts extended by the Bank, payments from prepaid services, and loans from third-party financial institutions using the Bank's assets as collateral, obtained employing false pretenses. *Id.*, ¶ 269.

As stated in the Complaint, the defendants have taken careful and deliberate steps to conceal their misconduct by layering activity. *See* Docket No. 1 ¶ 43. The information that shed light on the

defendants' scheme was and is currently in the defendants' control. In its current form, the Complaint reflects what has been discovered by exhaustive means at the date of filing. It was not until TBB's new management (which had no connection with the previous management of the Bank by Oliveros and Valencia) took the reins of the Bank that it could begin to assemble an initial explanation of the dire financial situation of the Bank and the reasons behind it. Further, TBB anticipates that discovery may show that other individuals and/or entities are involved, that the scheme has additional components, and that the damages are more widespread. *Id*., ¶ 50. TBB has adequately established that its lack of knowledge was not due to its own carelessness but because of the extent of the defendants' concealment and the complexity of the illegal schemes.

The Complaint thus sets forth an independently powerful fraud claim against Oliveros and Holding Activo. As demonstrated, Oliveros and Holding Activo made numerous false statements to the Bank (now TBB). (The circumstances also established a duty to speak and not to conceal material information.) Oliveros and Holding Activo's statements were material; they went directly to the terms on which the Bank was induced to enter into transactions and extend money. Oliveros and Holding Activo made the statements to induce the Bank to act on them. The Bank acted to its detriment on Oliveros and Holding Activo's statements. The Bank, now TBB, was damaged.

Contrary to Oliveros and Holding Activo's argument, TBB's Complaint is specific and contains sufficient information to support its claims, to provide Oliveros and Holding Activo with sufficient notice of TBB's claims against it, and to survive a motion to dismiss. Accordingly, the Honorable Court should deny the Motion to Dismiss.

WHEREFORE, TBB respectfully requests the Honorable Court deny the *Joint Motion to Dismiss*.

RESPECTFULLY SUBMITTED.

IT IS HEREBY CERTIFIED that, on this same date, a copy of this document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record.

In San Juan, Puerto Rico, this 11th day of September 2024.



**DLA Piper (Puerto Rico) LLC**
500 Calle de la Tanca, Suite 401
San Juan, PR 00901-1969
Tel. 787-945-9132
Fax 939-697-6102

*/s/ José Sosa Lloréns*
José Sosa Lloréns
USDC-PR No. 208602
jose.sosa@us.dlapiper.com

*/s/ Yahaira De la Rosa Algarín*
Yahaira De la Rosa Algarín
USDC-PR No. 306601
yahaira.delarosa@us.dlapiper.com